## UNITED STATES v. FRENCH et al.

### (Circuit Court, D. Massachusetts. June 15, 1893.)

### No. 1,258.

**1. NATIONAL BANKS—OFFICERS—REPORTS—FALSE ENTRIES.**

Rev. St. § 5209, provides that every president or other officer or agent of a national banking association, "who makes any false entry in any book, report, or statement of the association, with intent to injure or defraud the association, * * * or to deceive any officer of the association, or any agent appointed to examine its affairs, and every person who, with like intent, aids or abets" any such officer or agent in the violation of this section, shall be imprisoned, etc. *Held* that, under this section it is an indictable offense to make a false entry in a report to the comptroller of the currency, or to aid and abet the making of such entry.

**2. SAME—INDICTMENT—TIME OF MAKING ENTRIES.**

An allegation, in an indictment under this section, that defendant "did make a certain false entry in a certain report of the said association," will not be construed to mean that the entry was made after the report was completed, and was in fact an alteration.

**3. SAME—REPUGNANCE.**

For the purposes of this section, and of an indictment drawn under it, the preparation and completion of the report; the making of the false entry therein; its verification, attestation, and delivery to the comptroller,—may be considered as simultaneous, and there is consequently no repugnance in failing to allege that any or all of these things occurred in consecutive order.

**4. SAME—AIDING AND ABETTING—OFFICIAL CAPACITY.**

Though the counts in an indictment, under this section, for aiding and abetting the cashier in making such false entries, describe defendant as "being then and there a director" of the bank in question, it cannot be held that they charge him with aiding and abetting in his official capacity.

**5. SAME—ACCESSORY BEFORE THE FACT.**

Counts in such indictment which charge defendant with procuring and counseling the false entry before the fact are valid, for such acts are covered by the clause of the section extending the penalty to any one who "abets" an officer or agent in the acts prohibited.

**6. SAME—SETTING OUT REPORTS—OMISSIONS.**

The omission from the indictment of the dollar marks which appeared at the head of the columns in the report, in setting out the tenor of an entry alleged to be false, is immaterial.

**7. SAME.**

Where the entry whose tenor is set forth contains the words, "See schedule," it is not a valid objection to the indictment that these words are not explained, for it is only necessary to set out the context, when it is presumptively a part of what is set out.

**8. SAME.**

It is sufficient if the indictment allege the substance of the reports in question, without setting them out in full, for whether they are such reports as the law requires can be determined by the court from the allegations that they were made in response to the comptroller's order, and those touching their attestation, verification, and other like matters.

**9. SAME—PRACTICE—SPECIAL DEMURRER.**

A special demurrer will not be entertained, but the paper filed as such may be retained as an assignment of causes of demurrer under the general demurrer.

At Law. On demurrer to the indictment, which was drawn under Rev. St. U. S. 5209, providing as follows:

"Every president, director, cashier, teller, clerk, or agent of any association, who makes any false entry in any book, report, or statement of the association, with intent to injure or defraud the association, or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association, and every person who, with like intent, aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

For form of indictment, see U. S. v. Potter, 56 Fed. Rep. 83. Demurrer overruled.

Frank D. Allen, U. S. Dist. Atty.

Strout & Coolidge and William F. Dana, for defendant French.

PUTNAM, Circuit Judge. This case is now submitted on a demurrer filed by Jonas H. French, who is charged as aider and abettor of Joseph W. Work, cashier of the Maverick National Bank, in making false entries in reports to the comptroller of the currency. Although, perhaps, not necessary to the full extent found in this indictment, (U. S. v. Mills, 7 Pet. 138, and U. S. v. Simmonds, 96 U. S. 360,) yet counsel on each side concede that the allegations in the various counts, touching the acts of the cashier, Work, are framed like the allegations in counts 13 to 35, each inclusive, of the indictment against him, (No. 1,260,) changing false entries in various reports of the same association; so that the opinion of the court touching this indictment against French will necessarily cover the counts named in No. 1,260, (U. S. v. Work, 57 Fed. Rep. 391.)

It has been strongly pressed on the court, both on this argument and at previous hearings relating to other indictments, that a false entry in a report to the comptroller is not an indictable offense. Many propositions have been urged which would have great weight if the spirit of the statute was in doubt, or if its letter on this point was uncertain. That the general evil aimed at embraces reports to the comptroller, and that such, when falsified, are most emphatically within that evil, cannot be successfully denied, nor that the letter of the statute is broad enough to embrace them. Therefore, as the court finds nothing, either in the spirit or letter of the statute, so far as either touches this particular, which creates any cloud, it sees no propriety in seeking extrinsic aids in construing what does not need to be construed. Moreover, the court is met by a uniform line of decisions in other circuits touching this matter, sufficient to bind its legal conscience. In U. S. v. Allen, 47 Fed. Rep. 696, (decided in 1880 in the northern district of Illinois,) Judge Blodgett undoubtedly held the view of the statute in this particular now claimed by the United States; and the same was evidently held by Judge Benedict in U. S. v. Bartow, 10 Fed. Rep. 874, (decided in 1882 in the

southern district of New York;) by Judge Hammond in U. S. v. Means, 42 Fed. Rep. 599, (decided in 1889 in the southern district of Ohio;) by Judge Coxe in U. S. v. Hughitt, 45 Fed. Rep. 47, (decided in 1891 in the northern district of New York;) and by the United States circuit court in the eastern district of Virginia in U. S. v. Bain, referred to in Ex parte Bain, 121 U. S. 1, 7 Sup. Ct. Rep. 781.

The next two points urged by the defense can be more conveniently met together. They are, in substance, that the statements of time are repugnant, because some of the facts necessarily occurred in consecutive order, and also that there is a fatal defect in the allegations touching the making of the false entries, which the defense interprets by the following words: "When the entry was made the report is averred to have been complete." In connection with these propositions, but apparently not as a separate branch of defense, reference is made to the fact that some of the counts expressly allege transmission of the reports to the comptroller, and that these allegations do not set out time or place; but they are entirely unimportant with reference to any phase of this indictment, as they are mere surplusage, for reasons stated in the various opinions of this court in U. S. v. Potter, 56 Fed. Rep. 83.

The statement of the counsel for the defense that the report is "averred" to have been complete when the entry was made, is not strictly correct. There is no such averment in terms, and the most that can be claimed is that this can be deduced from what is averred. Moreover, the counsel go beyond the prior opinions of this court, already referred to, when they state that they are to the effect that the false entry "must be made at the time and in the course of the official drawing up of the report." The court was not called on to express an opinion on that proposition.

The substance of the position of the defense seems to be that the allegation in the indictment that Cashier Work did "make a certain false entry in a certain report of the said association" necessarily implies that, after the report was completed, he altered it, by making a new false entry in it. It is true that the English language is not always so precise as some tongues more philosophically constructed, and very many of its words and of its most common expressions are susceptible of more than one interpretation. Nevertheless, the same are constantly used for all purposes, including that of criminal pleading. In this view, the words of the statute, "or who makes any false entry in any * * * report," might be strained to include only a report beforetime completed, yet it must be conceded that, if such was the intention, there would have been used, in lieu of this expression, the word "alter," or some of its kin. The court, on examining the forms in Wharton's Precedents of Indictments and Pleas, touching entries criminally made in completed instruments, finds the words, "falsely altered," used in every instance, and nowhere the words, "did make false entry in," or the words, "did falsely enter in." There is no reasonable presumption that the entries charged in this case

intend the alteration of existing completed reports, more than there is that Shakespeare had in view conflicts already waging when he used the words:

> "Beware
> Of entrance to a quarrel."

Plainly, in both the statute and the indictment, the expression covers making a false entry in the preparation of a report, or in the process of completing it. Whether the statute could be construed to also include a false alteration by a cashier of his report after its verification and attestation, and before its delivery to the comptroller, and without a new verification and attestation, need not now be determined.

So far as the law is concerned, the preparation of the report, the completing of it, the making of an entry in it, false or true, the verification, attestation, and delivery to the comptroller, may be simultaneous and instantaneous; and there are no repugnances in not specifically alleging that any or all of these things occurred in consecutive order. The language of the court in the opinions in U. S. v. Potter, already referred to, is appropriate here, and disposes of the particular propositions it is now considering. The court there said:

"The criticisms on the use of the words 'then and there,' and the allegations of time, in the counts charging false entries in reports, and alleging that the accused was president of the bank, seem to require a refinement and strictness not known to the law. In innumerable instances known to every practitioner of experience, where there are set out many connected or related facts, though some may cover the whole of a day, and others only an instant, or a small part of a day, the words 'then and there' are used interchangeably, and without further specification, unless there is some presumption of law, or necessity of pleading, which does not exist in this case. The existence of the bank, and the tenure of office by the accused, are properly laid in terms to have the effect of a continuando, and stand by themselves. All the other facts might, in contemplation of law, have occurred simultaneously, or have taken only an instant in their occurrence, or occupied the whole of a day, and there is no presumption of law which required that they should be described as occurring in consecutive order."

With reference to the objection that in the aiding and abetting clauses occur the words, "being then and there a director," the counsel for the accused claim that the supreme court in U. S. v. Northway, 120 U. S. 327, 7 Sup. Ct. Rep. 580, decided that like words necessarily constitute an allegation of an act of an officer in his official capacity. We do not so understand. In U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. Rep. 512, that court went, apparently, beyond the questions submitted, and pronounced certain counts good in their entirety. But in U. S. v. Northway it did not assume to decide more than was certified, which, touching this point, was whether it was necessary to allege that the person aiding and abetting Fuller, the cashier, knew that Fuller was such cashier. It is true that, with reference to the person charged as aider and abettor, the indictment did contain the words, "being president and agent of the association," and that the court used the following language: "The

acts charged against the defendant could only be committed by him in his official capacity." But the letter of that portion of section 5209 relating to aiding and abetting, and the history of it, with the reasons for its adoption, as properly explained by the counsel for the accused, show clearly that the court, by this expression, could not have had reference to the particular matter now under consideration. There were other counts in the indictment in U. S. v. Northway charging misapplication of the funds of the bank; and the court, in the expression used, must have had reference to these. While in some cases this expression, "being president," "being director," etc., has been assumed to be sufficient to show that the person charged occupied the relation to the bank necessary under those parts of section 5209 which reach only certain official classes, yet it is too plain to need discussion that in the present case it can be rejected as surplusage. In those parts of the indictment directly charging the accused with aiding and abetting, there is nothing whatever to indicate that he did it in his official capacity. Therefore, without assuming to decide whether or not he might properly have been so charged, it is sufficient to say that the precise proposition made on this score by the defense cannot be maintained.

With reference to the claim that the counts are invalid which charge procuring and counseling before the fact, it seems from the definitions of the word "abet," wherever found, and especially from the expressions of Lord Hale, cited in Bish. St. Crimes, § 272, appearing on the brief for the defense, that it may well be construed as including what is thus objected to. As the evil to be remedied is as broad as the larger definition of the word, the court sees no occasion for limiting its effect. "The rule of strict construction is not violated by permitting the words of the statute to have their full meaning, or the more extended of two meanings, as the wider popular, instead of the more narrow technical, one; but the words should be taken in such a sense, bent neither one way nor the other, as will best manifest the legislative intent." U. S. v. Hartwell, 6 Wall. 385, 396.

Except for the fact that the primary portions of section 5209 are limited in terms to certain classes named, and therefore, if they stood alone, none others could be included in the punishment, (U. S. v. Hartwell, already cited, page 397,) any persons could have been indicted as principals in the misdemeanors which they declare, whether present at the act, aiding it in any form, or whether counseling, procuring, or urging it in advance. It was plain, moreover, that the "cashier, teller, clerk, or agent" named in that section might be far less culpable than others behind them, and, indeed, be but little more than the mere instruments of the true offenders. To meet this difficulty the provision touching aiding and abetting was brought in by a later enactment. The entire purpose to be accomplished would not be effectuated, if the clause in question should be construed not to include all who may be principals in misdemeanors according to the ordinary rules of the common law.

That provisions of this character with reference to misdemeanors are not subject to the doctrines applicable to principal and accessory in case of felony, was settled in U. S. v. Mills, 7 Pet. 138, and therefore there is no ground for claiming that any technical rule of the common law must be applied for limiting the natural force of the words in question.

In U. S. v. Northway, already referred to, the count under consideration in the fourth question certified to the supreme court (page 333, 120 U. S., and page 584, 7 Sup. Ct. Rep.) seems to have followed, in this respect, those at bar, and charged the accused with aiding, abetting, inciting, counseling, and procuring before the misdemeanor was committed. As the learned judges who sat in the circuit court certified up only the one proposition covered by the fourth question, it is evident that in all other respects they considered the count sufficient, and the statute applicable to counseling and procuring in advance of the act; and this court concurs with them.

The objections of the counsel for the defense to the allegations of intent are fully met by U. S. v. Britton, already cited, for the reasons explained in the prior opinions in the cases against French, Dana, and Potter. The intents alleged in the counts at bar are precisely the same, and are alleged in precisely the same language, as found in U. S. v. Britton. The fact that they are not distributed among several counts, as in U. S. v. Britton, is not important, because it is plain that several intents may be alleged in one count, and only a portion of them proved, as may be found convenient or possible at the trial. Neither is it of any consequence that U. S. v. Britton touched false entries in books, and the indictment at bar false entries in reports; because Rev. St. § 5209, so far as the intents are concerned, enacts the same with respect to one as the other.

The omission of dollar marks, which undoubtedly appear at the head of the columns in the reports, but which have not been reproduced in setting out the tenor of the alleged false entries, has been held in the former opinions in the case against Potter to be immaterial; and this is in harmony with the counts found in U. S. v. Britton, already referred to, where the same omission existed. Touching the point made by the defense that this entry is not set forth in its entirety, because the words "See schedule" are not explained, counsel misinterprets the opinions in the prior case against Potter. These laid down the mere proposition that the context should be set out when it modifies the entry and is presumptively a part of it. The counsel construe this as though it read, "when it may so modify." Whether it may modify or not, and if it does modify, whether this will be important, cannot in this instance be known from anything appearing on the face of the indictment, or until the case goes to trial.

The court is unable to sustain the proposition that the allegations of falsity in the various counts are argumentative. This will appear at once to be ineffectual, by considering that the counsel for

the accused state that the entry of overdrafts of $128.98 is what is negatived, when in fact the pleader has alleged that the false entry purported to show that there was due for overdrafts the sum named "and no more," and it is these last words which are negatived. To claim argumentativeness here is to attempt to refine pleadings beyond anything to which the court is accustomed; and if at common law they would bear such refinement, the proposition would be sufficiently met in the federal tribunals by the provisions of Rev. St. § 1025, prohibiting the quashing of indictments for mere matter of form.

The defense also claims that counts 11 to 15 are insufficient because they do not set forth the reports in full. This involves a difficult question of pleading. The rule which requires the setting out of the entire instrument by its tenor seems limited mainly, if not wholly, to cases of forgery, counterfeit money, and threatening letters. In libel, where the tenor is required, only so much need be set out as the prosecutor relies on. Amer. Crim. Law, § 2600; Bish. Crim. Proc. § 791. Bishop on Criminal Procedure (section 332) says: "If an instrument in writing is introduced into a pleading, it may, except where special reasons forbid, be equally well described by its legal effect as by its words." Assuming this to be correct, the rule applied to forgery, counterfeiting, and threatening letters would seem to be exceptional, and therefore not one from which any general principle can be deduced.

In Com. v. Stow, 1 Mass. 53, an indictment for issuing a false certificate to a parishioner, showing that the holder was a member of a certain religious society, and therefore relieved as rate payer, the person indicted being authorized to issue it if it had been true, the certificate was set out by its tenor. Whether or not this was necessary was not decided; but the common rule was applied, that, where the pleader sets out the tenor, he is held to it. This certificate, however, would seem to come quite closely within the reason usually given for requiring the entire tenor to be set out in forgeries. A reason frequently given, that, wherever the written instrument furnishes the gist of the offense, its entire tenor must be set out, is of too general a character to be satisfactory; because the questions arise, when do such instruments thus furnish the gist of the crime? and why are they said to furnish it in cases of forgeries, threatening letters, and counterfeiting, and not larcenies of bank notes or commercial paper? Careful law writers have undertaken to give a more specific reason. Gabbett's Criminal Law (volume 1, p. 370) says that the reason which requires the entire tenor of an instrument is that "the court might see how far it be any of those instruments, the falsely making or knowingly uttering of which the law has said shall be considered forgery." Heard's Criminal Pleading says (page 221) the cases show that this is the true criterion. To the same effect is Reg. v. Coulson, 5 Denison, Cr. Cas. 592, where Wilde, C. J., said it is only necessary to set out the entire tenor "when the court can derive assistance from seeing a copy of it on record, as when the case turns on the nature and character

of the instrument." Substantially the same phraseology is used in Wharf. Crim. Law, § 1468. In Lloyd's Case, 2 East, P. C. 1122, it was held that the tenor of an alleged threatening letter must be set out, because otherwise "it would be leaving to the prosecutor to put his own interpretation upon it; and to the jury, the construction of a matter of law." That the requiring of the whole tenor is not for the mere purpose of description is plain from the old case of Com. v. Bailey, 1 Mass. 62; where, in setting out an alleged counterfeit bank bill, the figures and words in the margin were omitted. The court held that this omission was unimportant, and added: "The whole bill, all that is evidence of a contract, is set out, and set out truly and precisely."

It would seem, therefore, that the rule is limited to pleading instruments which are of such a character that their legal effect can only be ascertained by examining the entire tenor; that is to say, of such a character that every word may be presumed to have some weight in ascertaining the substance. Ordinarily, this relates only to instruments which effectuate a contract; but threatening letters, which have been put in the same category, seem to require an examination of the entirety, for the purpose of ascertaining whether or not, on the whole, they are of the character alleged. This reason, however inconsistent the common law may appear in not applying it to bank notes and other commercial instruments when charged as the basis of a larceny, shows why it is that in libels it is necessary to set out only so much of the tenor as the prosecutor relies on, and why, in perjury,—an offense of the highest character,—it is sufficient to set out only the substance of the portions of a written instrument with reference to which the perjury was committed. Whart. Crim. Law, §§ 2253-- 2255; U. S. v. Chapman, 3 McLean, 390,—in which it was held that in charging perjury in a bankrupt's schedule, alleged to be false as to certain items, the generality need not be set out; Com. v. Warden, 11 Metc. (Mass.) 406,—an indictment based on an alleged false answer to a bill in equity; and various forms in Wharton's Precedents of Indictments and Pleas, including perjuries with reference to a false enlistment, a false invoice at the custom-house, and a false return of an insolvent creditor's estate.

Whether or not the reports in the case at bar are such as the law calls for can be easily determined by the court from the existing allegations touching the fact that they were made in response to the comptroller's order, and touching their verification, attestation, and other like matters; and in no way would the court be aided by the mass of material they contain, which, so far as the law on this point is concerned, is rubbish. The matters of detail which these reports contain cannot, within the meaning of Chief Justice Wilde, assist the court to see how far they are instruments within the statute in question, nor can they aid it in checking the prosecutor or the jury, as suggested in Lloyd's Case, ubi supra. In the view of the court, the rule applied by the

common law to forgeries, counterfeiting, and threatening letters is exceptional and unphilosophical, and, with the modern rules of criminal practice and procedure, there is no occasion for extending it. In this the court has in mind that in federal tribunals the accused has his exceptions as a matter of right, in criminal cases as well as in civil, wherever a writ of error lies; and, even where there is no writ of error, he may object to the introduction of a written instrument when offered in evidence, and then raise every question of its construction, and every legal objection, which could be raised if its entire tenor was set out in the indictment. As, therefore, it is nowhere assigned as a reason for setting out the entire tenor that it is necessary for the purpose of informing the accused of the offense with which he is charged, or for any other purpose for which certainty and particularity are required, it follows that, with the present methods of criminal practice and procedure in federal tribunals, the omission to set out the whole of these reports can in no way prejudice the accused, and must, at the most, be a matter of form under Rev. St. § 1025.

Therefore, in the absence of any authorities brought to my attention by the counsel for the defense in reference to this point, I must hold that to incumber indictments with voluminous documents, of which only small portions are needed for informing the accused or the court of the particularity and identity of the offense charged, tends to increase the mass of pleadings to an embarrassing extent, without apparent advantage, and subjects the prosecutor to great danger of variance in unimportant details, to the defeat of justice. It seems to the court that the counts in this case which do not contain these reports, fully and sufficiently inform the court and the accused of the offense with which he is charged, and enable him, in all respects, to prepare his defense conveniently and safely, and that if at the common law anything beyond this would be required, yet under the statute already referred to the omission is a mere matter of form.

Whatever other propositions are sought to be raised by the defense are too general to require the attention of the court, or are covered by U. S. v. Britton, already cited, or by the opinions of this court in the cases already referred to.

The court regrets that it has not had the benefit of the precise forms of indictments which have been before various federal tribunals in other cases under Rev. St. § 5209. It is aware that some of the questions of pleading involved in this opinion are close, and that, touching them, the court is without the aid of settled precedents or clear authority, and is liable to err. Nevertheless, notwithstanding the unwillingness of the court to put the United States and the accused to the expense and labor of a trial which may prove abortive by reason of errors hereafter found by the appellate tribunal, the court is unable to come to any other conclusion than that the indictment must be sustained in its entirety. The court has found it sufficient to investigate the propositions raised by counsel, and has not undertaken to seek out others for itself,

and therefore is not prejudiced as to any such which may hereafter arise.

The accused has filed a paper as a special demurrer. The court does not know of any rule of law by which special demurrers, properly so called, are admissible in criminal proceedings, barring one or two exceptions not necessary to be mentioned here. Moreover, as the accused has filed a general demurrer, further pleadings, until that is disposed of, are, of course, at the discretion of the court. The paper, therefore, cannot be filed as a special demurrer, but, if the accused desires, it may be allowed to stand as an assignment of causes of demurrer.

Demurrer overruled, and the indictment adjudged sufficient; the accused to answer over according to the statute.