## UNITED STATES v. HEINZE.

### (Circuit Court, S. D. New York. March 2, 1908.)

**1. BANKS AND BANKING—NATIONAL BANKS—OFFENSE—STATUTES—CONSTRUCTION.**

Rev. St. § 5208 (U. S. Comp. St. 1901, p. 3497), declares that it shall be unlawful for any officer, agent, or clerk of any national bank to certify any check when the drawer has not on deposit with the bank an amount of money equal to the amount specified in the check; and Act Cong. July 12, 1882, c. 290, § 13, 22 Stat. 166 (U. S. Comp. St. 1901, p. 3497) declares that any officer, clerk, or agent of a national bank who shall certify checks before the amount thereof shall have been regularly entered to the credit of the drawer on the books of the bank shall be guilty of a misdemeanor. *Held*, that section 5208 does not create any criminal offense, but that such section should be read with section 13, and that the two create one offense, viz., the certification of a check when the drawer has not sufficient money to cover it, or before the amount shall have been regularly entered.

**2. INDICTMENT—DIFFERENT OFFENSES—JOINDER.**

Where a statute makes either of two or more distinct acts connected with the same general offense and subject to the same measure and kind of punishment indictable as separate and distinct crimes when committed by different persons or at different times, they may, when committed by the same person at the same time, be coupled in one action as constituting one offense.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 403.]

**3. CRIMINAL LAW—EVIDENCE—JUDICIAL NOTICE—MEANING OF WORDS.**

Courts are bound to take judicial notice of the meaning of the word "certify" as applied to bank checks.

**4. BANKS AND BANKING—DEPOSITS—CHECKS—"CERTIFY."**

The word "certify," as applied to bank checks, indicates that certain words have been written or printed on a check, and that the check has

passed from the custody of the bank into the hands of some other party, and that thereby the person certifying created an obligation of the bank.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1033, 1034.]

5. SAME—NATIONAL BANKS—CERTIFICATION OF CHECKS—OFFENSES—INDICTMENT.

An indictment against an officer of a national bank, alleging unlawful certification of checks, was not fatally defective for failure to set out totidem verbis the written certifications, under the rule that in an indictment in federal courts it is not necessary to allege the tenor of an instrument, unless it touches the gist of the crime.

6. INDICTMENT—ALLEGATION OF WRITTEN INSTRUMENTS.

The rule which requires a setting out of an entire instrument or its tenor in an indictment in the federal courts is limited mainly, if not wholly, to cases of forgery, counterfeiting, and sending threatening letters.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 283.]

7. BANKS AND BANKING—NATIONAL BANKS—OFFENSES—CERTIFICATION OF CHECKS.

Where an indictment against a national bank officer charged him personally with illegally certifying certain checks, it was necessary for the government, in order to sustain such charge, to prove that the individuals who actually executed the certification indorsement were but the physical instruments of the defendant and acted in accordance with his orders.

8. SAME—"WILLFUL MISAPPLICATION."

In a prosecution of a national bank officer for "willful misapplication" of the moneys, funds, and credits of the bank, the indictment properly alleged facts showing how the misapplication was made and the illegality thereof; the words "willful misapplication" having no settled technical meaning.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, §§ 973.

For other definitions, see Words and Phrases, vol. 8, pp. 7482, 7483.]

9. SAME—OVERDRAFTS.

An overdraft on a national bank may be legal or criminal, according to the intent of the person committing it, inferred from the surrounding circumstances shown by the evidence.

10. SAME—INDICTMENT—DEMURRER.

It was no ground of objection, on demurrer to an indictment against a national bank officer for willful misapplication of the bank's funds, that the jury might draw from all the testimony the inference that the transaction amounted to no more than a legal overdraft.

11. SAME—WILLFUL MISAPPLICATION—DESCRIPTION.

Where, in a prosecution against a national bank officer for willful misapplication of the moneys, funds, and credits of the bank, the indictment definitely charged the value in lawful money of the United States of the misapplied property, it was not defective for failure to specify the exact thing misapplied, whether moneys, funds, or credits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 973.]

On Demurrer to Indictment under Rev. St. § 5208, Act July 12, 1882, c. 290, § 13, 22 Stat. 166 (U. S. Comp. St. 1901, p. 3497), and section 5209 (U. S. Comp. St. 1901, p. 3497), and on Motion to Quash.

Wm. J. Wallace, Edward Lauterbach, and John C. Tomlinson, for demurrer.

Henry L. Stimson, U. S. Atty., opposed.

HOUGH, District Judge. 1. The first 15 counts are said to be bad for duplicity, in that they state two distinct offenses, each requiring different proof to establish it, viz.: (1) An offense under section 5208 (U. S. Comp. St. 1901, p. 3497); i. e., the certification of a check when the drawer has not on deposit with the bank "an amount of money equal to the amount specified in such check." (2) An offense under Act July 12, 1882, c. 290, § 13, 22 Stat. 166 (U. S. Comp. St. 1901, p. 3497); i. e., the certification of a check "before the amount thereof shall have been regularly entered to the credit of the dealer upon the books of the banking association."

Section 5208 does not create any criminal offense. That section and the act of 1882 must be read together, and when so read they denounce but one crime, and not two crimes. The one crime that is denounced is certifying a check under either (a) two sets of circumstances, or (b) one set of circumstances described in two ways. Regarding the descriptive words used in section 5208 and those used in the act of 1882 as setting forth different acts:

"It is well settled that in a criminal pleading, where a statute makes either of two or more distinct acts connected with the same general offense and subject to the same measure and kind of punishment indictable as separate and distinct crimes when committed by different persons or at different times, they may, when committed by the same person at the same time, be coupled in one count as constituting one offense." **U. S. v. Delaware, L. & W. R. (C. C.) 152 Fed. 269, 273.**

But, whether these two sets of descriptive words be regarded as conveying different meanings or not, the exact point raised by this demurrer was before the court in U. S. v. Potter (C. C.) 56 Fed. 83. It was there urged (page 85) that certifying checks before sufficient money is on deposit is one offense, and certifying checks before the amount is entered upon the books of the bank is another, and that therefore some counts, which set out circumstances covering both offenses, were bad for duplicity; and this point was explicitly overruled by Putnam, J. (page 92).

2. It is also urged, under the motion to quash, that the first 15 counts are bad, in that they do not set out totidem verbis the written certifications which an examination of the last 16 counts shows to have existed upon the checks referred to in all the counts. The word "certify," as applied to bank checks and as used in the statutes under consideration, has become a term of art, and the court is bound to take judicial notice of its meaning. When it is alleged that one "certified" a check, that word implies that certain words have been written or printed upon said check, and that the check passed from the custody of the bank into the hands of some other party, and that thereby the person certifying created an obligation of the bank. Potter v. U. S., 155 U. S. 444, 15 Sup. Ct. 144, 39 L. Ed. 214.

This indictment alleges a certification. If under it there be not proven such actions or course of business as are necessarily and legally implied from the word "certify" or "certification," then there is a variance between the count and the proof. It does appear to have frequently occurred in indictments for the same offense, as is alleged by this instrument, that the exact words of certification were set out;

but no case is cited showing that this course is necessary, and it appears to me that the ruling of the Supreme Court in the Potter Case as to the meaning of the word "certification" renders the exact letters and figures declaring the certification matters of proof, rather than pleading. This is consonant with the general rule that:

"The rule which requires a setting out of the entire instrument or its tenor is not applicable, unless it touches the very pith of the crime itself, as in forging or counterfeiting." U. S. v. Grunberg (C. C.) 131 Fed. 137.

And, further:

"The rule which requires a setting out of the entire instrument or its tenor seems limited mainly, if not wholly, to cases of forging, counterfeiting money, and threatening letters." U. S. v. French (C. C.) 57 Fed. 382.

3. Under the motion to quash it is suggested that, inasmuch as from the whole indictment it appears that in no case did this defendant certify in the sense of personally signing the certification stamped on the checks in question, therefore he personally cannot be indictable under section 5208 as amended, and for this proposition Judge Putnam's remarks in U. S. v. Potter, supra, are cited as authority. I think that case is authority for no more than the holding that, where a count charged one with aiding and abetting another in making an unlawful certification, such count was not authorized by the statute.

Such is not the case here. The count distinctly charges this defendant with himself certifying the checks. The whole indictment, taken together, shows that the first 15 counts must fail unless the prosecution can prove that the individuals who actually executed the certification indorsed were but the physical instruments of this defendant in doing what was done, and that an indictment will lie for causing or procuring a coerced subordinate to do the forbidden act is distinctly held by Putnam, J., in the case last cited. Whether the ruling made in that case does not infringe the general rule that there are no accessories to a misdemeanor may be doubted; but a discussion of that point is not necessary here.

4. As to the last 16 counts, it is asserted that they are bad for indefiniteness and uncertainty. They certainly set forth in language plain and easily understood exactly with what the defendant is chargeable. The gist of the offense is in the language of the statute that he "willfully misapplied" the "moneys, funds, and credits" of the Mercantile National Bank. The draftsman of the indictment evidently recognized that the expression "willful misapplication" has not a settled technical meaning, and must therefore be supplemented by further averments showing how the misapplication was made and the illegality thereof. Batchelor v. U. S., 156 U. S. 429, 15 Sup. Ct. 446, 39 L. Ed. 478. In my judgment the supplementary averments are plain, when measured by the criticism of Judge Thayer in Rieger v. U. S., 107 Fed. 919, 47 C. C. A. 61 et seq.; and the illegality of the transaction, if proven as averred, is also clear, within U. S. v. Fish (C. C.) 24 Fed. 585.

5. It is urged that, if all that the last 16 counts set forth be proven, the proceeding amounts to no more than an overdraft. An overdraft may be legal, or it may be criminal, according to the intent of the

person committing it, as inferable from the surrounding circumstances shown in proof. That the jury may not draw from all the testimony the inference necessary to sustain the indictment is no ground of objection on demurrer.

6. It is argued that the last 16 counts do not show what was misapplied—i. e., whether moneys, funds, or credits—and that it is incumbent upon the government to specify the exact thing misapplied. The value in lawful money of the United States of the misapplied property is definitely and fully set forth, and it seems to me entirely clear that this is sufficient. To the refinement attempted in U. S. v. Smith (D. C.) 152 Fed. 544, I cannot give assent, and it is opposed to the reasoning in Dow v. U. S., 82 Fed. 904, 27 C. C. A. 140.

The demurrers are overruled, and the motion to quash denied.