## UNITED STATES v. CARTER & CO.,
Inc., et al.

No. 21793.

District Court, W. D. Kentucky,
at Louisville.

May 25, 1944.

Eli H. Brown, III, U. S. Atty., of Louisville, Ky., for plaintiff.

Sawyer A. Smith and H. W. Vincent, both of Covington, Ky., and Curtis & Curtis, of. Louisville, Ky., for Carter & Co., Inc., Wm. Taylor Carter, and Robert Simons.

John J. Hooker and Joe B. Cummings, both of Nashville, Tenn., for Max Lieber and J. E. Burmeister.

James B. Roberts, of Chattanooga, Tenn., for R. I. Ross.

MILLER, District Judge.

Counts 1, 2, 3 and 8 through 13 of the indictment herein charge the defendants with employing a device or scheme to defraud by the use of the mails in the sale of a security. Counts 4, 5, 6 and 7 charge the defendants with the use of the mails in carrying out a scheme and artifice for obtaining money and property by means of false pretenses. The 14th Count charges the defendants with a conspiracy to use the mails to carry out a scheme or artifice to defraud and to effect the fraudulent sale of securities. The defendants have demurred to each count of the indictment.

It is first claimed that the allegations of each count are too indefinite and fail to set out with sufficient particularity any scheme which would advise the defendants of the nature and character of the charge. A reading of the allegations of the first count of the indictment respecting the scheme and representation relied upon, which are incorporated by reference into each of the 12 succeeding counts, is sufficient by itself to dispose of this contention. Summarizing it briefly, it alleges that the defendants organized a Kentucky corporation known as W. T. Carter and Company with its principal office in Louisville, Kentucky, to engage in the business of buying, selling and trading in whiskey warehouse receipts and securities for its own account and for the account of customers; that the defendant William Taylor Carter was President and Director and participated in the management and control of the company with the defendants Robert Simons and Henry Bernstein; that the defendants falsely represented to its customers that the company was an old, reliable and well established firm in good financial standing; that the defendants falsely represented to its customers that the company had developed a market for the disposal of the products of certain distilleries and would therefore secure the maximum return of money on the customers' whiskey; that defendants induced the customers to pay cash in advance for whiskey warehouse receipts which the defendants did not intend to purchase or deliver to the customers but on the contrary intended to convert to their own use; that the defendants falsely represented to the customers that they bottled and sold whiskey and that customers would save money by having Carter and Company bottle the whiskey direct instead of paying additional commissions and fees to other firms; that the defendants induced customers to deliver to them whiskey warehouse receipts under the pretense that the defendants would bottle the whiskey and remit the proceeds within a certain time, whereas in fact the defendants planned to sell the whiskey and appropriate the proceeds to their own use; that the defendants falsely represented that the company had the authority and right to bottle the whiskey under the Old Grand-Dad Label; that the defendants falsely represented to customers that they would exchange barrels of whiskey with them when as a matter of fact they never intended to make such exchange but intended to sell the customers' whiskey for the defendants' own use and benefit; that the defendants issued to customers bottling contracts wherein they represented and promised that they would bottle and sell the customers' whiskey within a specified time, which bottling contracts were merely a trick to extract the customers' whiskey from them, which whiskey the defendants afterwards sold and then converted the proceeds therefrom to their own use; that the defendants transmitted through the United States mails circulars and other mail matter for the purpose of soliciting the names of various customers who held warehouse receipts; and that the defendants would send written confirmations of purchases and sales and make partial payments to said customers on said alleged sales, when as a matter of fact no such sales had been made. The time and place is fixed as between January 1, 1939, and December 31, 1943, in Louisville, Jefferson County, Kentucky. The names and addresses of 39 alleged victims are specifically given, and in each of

the first 13 counts, a particular letter written and mailed by one of the defendants to one of the alleged victims is specifically set out in its entirety. The contention on this score obviously has no merit.

It is next contended that the counts dealing with the sale of a security are defective because the security referred to is not copied in its entirety in the respective counts of the indictment. Reliance is had upon an early Federal Court ruling from the District Court of Mississippi in United States v. Watson, 17 F. 145. However, such a ruling if it ever existed is apparently not the controlling rule of law at the present time. In United States v. Heinze, C.C., 161 F. 425, 428, the Court states the rule to be "the rule which requires a setting out of the entire instrument or its tenor seems limited mainly, if not wholly, to cases of forging, counterfeiting money, and threatening letters," citing in support thereof United States v. French, C.C., 57 F. 382 and United States v. Grunberg, C.C., 131 F. 137. The Statute which governs the offense in question (Section 77q, Title 15 U.S.C.A.) refers to "the sale of any securities." The words of the indictment specifically charge the sale of a security in the language of the statute, and then in each instance describes it generally as a bottling contract issued by the defendant W. T. Carter and Company. This, together with a particular letter relied upon in each instance, sufficiently advises the defendant of the nature and character of the written instrument relied upon by the Government. Whether or not the evidence offered by the Government will establish it to be a security within the meaning of the statute is an entirely different question which will be disposed of at the close of the Government's case.

It is next claimed that none of counts 1 through 13 sufficiently charge the use of the mails so as to bring the offenses within the provision of the respective statutes. Section 77q of Title 15 U.S.C.A. provides:

"It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—(1) to employ any device, scheme, or artifice to defraud, or * * *."

Counts 1, 2, 3 and 8 through 13 specifically charge that the defendants "in the sale of a security, to-wit, a bottling contract * * * issued by W. T. Carter and Company, did unlawfully, wilfully, knowingly, and feloniously employ said scheme and artifice to defraud by the use of the mails * * *." These allegations practically follow the exact language of the statute and clearly are sufficient. Counts 4, 5, 6 and 7 do not allege the sale of any security but charge the sale of certain whiskey warehouse receipts and whiskey itself. These counts use the same language as is used in the other counts namely, taking the 4th count as an example:

"The said defendants, in the sale of certain whiskey warehouse receipts on behalf of James R. Lyons, Cartersville, Georgia, as broker, did unlawfully, knowingly, wilfully, and feloniously employ said scheme and artifice to defraud by the use of the mails in the following manner, towit: * * * *."

Such counts are brought under Section 338 of Title 18 U.S.C.A. which deals with the use of the mails to promote frauds, and which requires that in order for the offense to be committed that there must be a scheme or artifice to defraud or for obtaining money or property by means of false pretenses, and that for the purpose of executing such scheme or artifice the person charged must place or cause to be placed a letter or writing in any post office or letter box of the United States. Although in these counts the literal wording of the statute is not used, yet it appears clear that the allegation that the defendants did unlawfully employ said scheme or artifice to defraud by the use of the mails is synonymous with the provision of the statute that:

"For the purpose of executing such scheme or artifice or attempting so to do, place or cause to be placed, any letter * * * in any post office, * * * or other letter box of the United States, or authorized depository for mail matter, to be sent or delivered by the post office establishment of the United States."

The words sufficiently allege the use of the mails for the purpose of executing the alleged scheme. It is not necessary that the exact language of the statute be adopted.

It is next contended that Counts 1 through 13 are duplicitous in that they charge a violation of both Section 338, Title 15 U.S.C.A. and section 77q, Title 15

U.S.C.A. This contention is obviously not well taken with respect to Counts 4, 5, 6 and 7 in that those counts do not allege the sale of any security which is a requisite to the commission of the offense contained in 77q of Title 15 U.S.C.A. The facts alleged in these counts would constitute only the single offense denounced by Section 338, Title 18 U.S.C.A., dealing with the use of the mails for the purpose of executing a scheme or artifice to defraud a person of property or money. Counts 1, 2, 3 and 8 through 13 do allege the sale of a security and also contain allegations which would constitute the use of the mails for the purpose of executing a scheme or artifice to defraud a person of property or money. But this does not necessarily mean that they are duplicitous. One offense may be but one of the different steps leading to the commission of the other offense. Where one crime is an essential element of another crime the indictment is not duplicitous because in charging the second crime it necessarily has to include elements constituting the first crime. Price v. United States, 8 Cir., 218 F. 149, L.R.A.1915D, 1070; Bridgeman v. United States, 9 Cir., 140 F. 577, 587 through 589. In proceeding under Section 77q of Title 15 U.S.C.A. it is necessary that the Government allege the existence of a scheme or artifice to defraud and the use of the mails to carry out that scheme, and then to allege in addition thereto that the acts occurred in the sale of a security. The offense charged is accordingly one which involves the sale of a security and the count is not rendered duplicitous merely because in charging that, it necessarily states facts which would constitute the use of the mails to defraud in a transaction other than the sale of a security.

 The 14th count charges a conspiracy. The defendants contend in support of their demurrer to this count that it does not set out the facts constituting the offenses which the defendants are alleged to have conspired to commit, but merely charges that they conspired "to commit acts made offenses against the United States by Section 338, Title 18 United States Code Annotated and by Section 77q, Title 15 United States Code Annotated, to-wit, unlawfully, knowingly, wilfully and feloniously to devise and intend to devise a scheme and artifice to defraud and to use the United States mails in carrying out said scheme and artifice to defraud and to effect the fraudulent sale and transfer of securities." It is claimed that this is not sufficient to advise them as to what scheme was being effectuated so as to operate as a bar to a subsequent indictment for the same offense. It is well settled that the allegation of a conspiracy to commit several different offenses is not defective for duplicity. Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23; Bogy v. United States, 6th Cir., 96 F.2d 734; Troutman v. United States, 10th Cir., 100 F.2d 628. It is also well settled that in an indictment charging a conspiracy the description of the offense need not be set out in as much detail as would be necessary in an indictment charging the commission of the specific offense. Wong Tai v. United States, 273 U.S. 77, 81, 47 S.Ct. 300, 71 L.Ed. 545, Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; Center v. United States, 4 Cir., 96 F.2d 127, 129. "The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'" Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861. The 17 overt acts set out in the 14th Count definitely identify the time, place and details of the offenses involved. Although it is true that the sufficiency of the allegations of a conspiracy indictment can not be established by the overt acts thereafter alleged, yet such overt acts as are alleged may be looked to and be used as explanatory of the conspiracy portion of the indictment. Anderson v. United States, 8 Cir., 273 F. 20, 26; Woitte v. United States, 9 Cir., 19 F.2d 506, 508; United States v. Downey, D.C.R.I., 257 F. 364, 366; Wishart v. United States, 8 Cir., 29 F.2d 103, 108. Under these authorities the allegations of the 14th Count taken in their entirety sufficiently describe the offenses upon which the Government will rely.

The demurrers of the respective defendants to the various counts of the indictment are accordingly overruled.