**UNITED STATES of America,**
**Appellee,**

v.

**Robert G. WARNER, Appellant.**

**No. 19743.**

United States Court of Appeals,
Eighth Circuit.

June 8, 1970.

As Amended on Denial of Rehearing
July 10, 1970.

Rehearing En Banc Denied July 20, 1970.

Grove G. Sweet, St. Louis, Mo., for appellant.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr., U. S. Atty., and Irvin L. Ruzicka, Asst. U. S. Atty., on brief.

Before BLACKMUN, GIBSON and LAY, Circuit Judges.

GIBSON, Circuit Judge.

Robert G. Warner appeals from a jury verdict finding him guilty of five counts of aiding, abetting, counseling and advising the preparation and filing of false and fraudulent income tax returns in violation of 26 U.S.C. § 7206(2). The original indictment consisted of 14 counts of which the Government dismissed four and the jury acquitted on five. The Court imposed a sentence of 9 months in the custody of the Attorney General on each of the five counts on which conviction was had, the sentences to run concurrently. Warner appeared pro se in the District Court.

Defendant Warner was in the business of preparing income tax returns in the years 1964 through 1966 in North St. Louis County. On March 24, 1966 Jack Gastorf, Special Agent of the Internal Revenue Service, called at defendant's place of business pretending to be a baker with a working wife and submitted other fictitious information ostensibly to enable Warner to prepare Gastorf's income tax returns.

Several days later Special Agent Gastorf returned to pick up his returns and observed several discrepancies between the information submitted and the information recorded by Warner in the return warranting further investigation.

At the end of April 1966 Special Agent Gastorf called at Warner's home and identified himself as an IRS Agent. They proceeded to Warner's place of business where, with Warner's consent, Special Agent Gastorf removed all of the files and records connected with Warner's business. An indictment was returned against defendant on December 19, 1968.

The evidence presented by the Government at the trial in which Warner defended himself was relatively simple. A witness was called in connection with each count and in each case the witness identified a memorandum of income and expenses he had submitted to Warner for the purpose of having Warner prepare the tax return; the witness then denied knowledge of the source of discrepancies between the memorandum and the return. The discrepancies noted in the testimony usually involved simple increases in deductible expenses above those stated in the memorandum submitted by the client and/or similar reductions in gross income. Of the counts for which Warner was found guilty Counts II and III involved fraudulent understatements of $1000 in gross income for both 1964 and 1965 and an overstatement of business expense of $1000 on the 1965 return, Count IV involved a fraudulent understatement of $500 in gross income and an unwarranted and fraudulent deduction of $140, Count VI charged a fraudulent excess business expense deduction of $1850 and Count IX charged a fraudulent excess medical expense deduction of $240, a fraudulent and excess interest expense deduction of $100, and a fraudulent and excess miscellaneous deduction of $15.

Warner raises five allegations of error: (1) he was denied the right to effective assistance of counsel because he was not sufficiently informed of the functions of counsel to be able to make an informed and intelligent waiver of that right; (2) the judgments on Counts III, IV and IX are duplicitous; (3) the evidence on each of the counts is insufficient to sustain a conviction; (4) the indictment and exhibits 8 and 9 with IRS audit reports attached were erroneously sent to the jury room during the jury's deliberations; (5) both the trial judge and the prosecuting attorney improperly commented upon the failure of the defendant to testify in his own behalf.

■ 1. The Sixth Amendment to the United States Constitution, of course, provides a defendant with the right to assistance of counsel. Included within this right is the right of a defendant to waive counsel. This right is implemented by 28 U.S.C. § 1654 and Rule 44, Fed.R.Crim.P. and has been recognized by the Supreme Court in Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 279, 63 S.Ct. 236, 240, 242, 87 L.Ed. 268 (1942):

> "The short of the matter is that an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may * * * waive his Constitutional right to assistance of counsel. * * * (275)
>
>    *     *     *     *     *     *
>
> "[T]he Constitution does not force a lawyer upon a defendant." (279, 63 S. Ct. 242).

■ While one may waive the right to assistance of counsel, " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Care is required to ascertain that a waiver is voluntarily and intelligently made.

The defendant was twice interrogated as to his desire to waive counsel. At the arraignment it was noted that Warner was appearing without counsel. Judge Meredith inquired as to whether defendant had funds and defendant responded that he could make arrangements for an attorney but later said he wished to defend himself. Judge Meredith advised against a pro se defense and Warner acknowledged its shortcomings but insisted on so doing and at the

same time expressed financial ability to hire a lawyer. Judge Meredith continued to attempt to dissuade defendant from a pro se representation, pointing out that a lengthy imprisonment was possible. Judge Meredith then suggested a continuation of one week but Warner desired to return to work in St. Augustine, Florida where he then lived and expressed a desire to have the matter handled that day. Thus, Warner waived counsel and entered a plea of not guilty.

Just prior to trial the court once again questioned Warner in regard to his desire to defend himself and clearly informed him that the court would appoint a lawyer if the defendant could not afford one. Nevertheless, defendant insisted upon defending himself.

■ Judge Meredith made an affirmative effort to dissuade Warner from representing himself and also offered appointment of counsel. A judge cannot (much as he might desire) insist that a defendant obtain counsel or accept appointment of counsel.

■ We think Warner's waiver of counsel was intelligently and understandingly made. Johnson v. Zerbst, *supra,* indicated that waiver would not easily be presumed but also stated at 464, 58 S.Ct. at 1023, "the determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." A divided court in Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948) appears to require procedural exactitude in determining that a waiver of counsel was made with true understanding and intelligence. *Von Moltke* indicates that the defendant should be informed of the nature of the charges, the range of allowable punishments, possible defenses to the charges, and all other facts essential to a broad understanding of the whole matter.

The United States Courts of Appeals have not applied the broad language of *Von Moltke* literally. In Spanbauer v. Burke, 374 F.2d 67 (7th Cir. 1966), cert. denied 389 U.S. 861, 88 S.Ct. 111, 19 L. Ed.2d 127 (1967), which contains perhaps the most exhaustive study of the law of waiver of counsel as applied in the various circuits, the Court said, 374 F.2d at 72:

> "It appears that federal courts have looked to the substance of the *Von Moltke* formulations, and not to its formulas. * * * [and]
>
> * * * * * *
>
> " * * * have * * * viewed the question of waiver of counsel as ultimately an issue, irrespective of the trial court's fulfillment of its *Von Moltke* duties, of whether the accused knowingly and intelligently chose to waive counsel."

Virtually the same appraisal of the law was made by this Court in Collins v. United States, 206 F.2d 918 (8th Cir. 1953).

In the case at bar, the defendant was fully aware of his right to counsel and was informed of the right to appointed counsel. He was aware of and acknowledged the perils of a pro se defense and was informed that a finding of guilty could result in lengthy imprisonment. Furthermore, in considering the "background, experience and conduct of" the defendant, it appears that he is relatively sophisticated, a high school graduate, and a tax law student. As a mature adult he should bear the responsibility for his own decision.

Although we believe that in most cases prudence would suggest a somewhat more exhaustive interrogation by the trial court to determine whether a waiver of counsel is intelligently and understandingly made, we believe the facts here indicate that the waiver was not handled in a perfunctory manner but sufficient inquiry was made to ascertain that this particular waiver of the assistance of counsel was intelligently and understandingly made.

2. Defendant next asserts that Counts III, IV and IX on which convictions were had were duplicitous and

should, therefore, be reversed. The gravamen of this claim is that each of these counts properly charges that defendant knowingly aided and assisted in the preparation of a fraudulent tax return in violation of 26 U.S.C. § 7206(2) but that each count then erroneously went on to charge defendant with *himself* misrepresenting material facts on income tax returns which is a violation of 18 U.S.C. § 1001. Further, defendant asserts, Count IX failed to state that defendant's acts were willful as required by the statute.

■ There is very little substance to these allegations. It is true as defendant suggests, citing Missouri v. Oswald, 306 S.W.2d 559 (Mo.1957) that where two distinct crimes are charged in one count the count charged is void since the defendant is denied the right to the unanimous concurrence of a jury on each offense charged before a conviction will result.

■ That is not the situation here. In the first place the allegedly improper segments of each count of the indictment have been improperly taken out of context by the defendant. The first part of each count complained of charged Warner with unlawfully, willfully (Count IX did not include the word "willfully"), and knowingly aiding and assisting in, procuring, counseling and advising the preparation and presentation of a false and fraudulent income tax return. This was followed by a listing of the several misrepresentations contained in the unlawful tax return complained of in each count. These misrepresentations were stated in two ways. Some stated the tax return was fraudulent and false in *that it* contained a specific error (which was described), others stated that the return was fraudulent and false in that *Robert Warner represented* some erroneous fact (which was described) on the return. It is clear that this is not an attempt to charge two crimes in one count. Each instance described within a count represented a separate fraudulent misrepresentation on a single tax return and was a description of how defendant aided the filing of a fraudulent return in violation of 26 U.S.C. § 7206(2). Furthermore, each count was concluded with a specific statutory charge under 26 U.S.C. § 7206(2) only. Thus it appears each count charged defendant with committing several acts but only one crime.

■ Where more than one act is charged in a count, the count is not duplicitous if the acts were part of a transaction constituting a single offense. United States v. Lennon, 246 F.2d 24 (2d Cir. 1957), cert. denied, 355 U.S. 836, 78 S.Ct. 60, 2 L.Ed.2d 48. Even where two or more separate offenses are charged in one count this may not be duplicitous or erroneous where one crime charged contains as an essential element the other crime charged. United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943); Price v. United States, 218 F. 149 (8th Cir. 1914); United States v. Carter & Co., 56 F.Supp. 311 (W.D.Ky.1944). Thus, though the charges of misrepresentation by Warner personally may by indirection have been in violation of 18 U.S.C. § 1001, as well as in violation of 26 U.S.C. § 7206(2), the crime actually charged, the counts are nevertheless not for that reason void for duplicity. The crime charged was violation of 26 U.S.C. § 7206(2). The fact that the acts cited in violation of that statute may also have been in violation of another statute, which violation was not charged, will not render the count void for duplicity.

■ Defendant also suggests in his reply brief that Count IX of the indictment improperly eliminated the word "willfully" from its charge, that "willfully" is an important constituent part of the statutory offense, and its elimination renders the count invalid and void. Since this issue is first raised in the reply brief it need not be considered by us. Finsky v. Union Carbide and Carbon Corp., 249 F.2d 449 (7th Cir. 1957), cert. denied, 356 U.S. 957, 78 S.Ct. 993, 2 L.Ed.2d 1065 (1958).

3. Defendant contends that the evidence presented by the Government was insufficient to support the verdict. The crux of this claim is that the Government showed only that the figures on the returns filed did not coincide with the figures on the memoranda prepared by the taxpayers and given to the defendant, and that such alterations were not authorized by the taxpayers. Defendant claims this is insufficient because the Government failed to prove which version was correct, since in all but one instance, the taxpayers were not queried as to which figure was correct but were asked only which figure they authorized.

In light of the Government's proof the bare possibility did exist that in the case of each taxpayer Warner found errors which necessitated a revising of the taxpayer's original figures. The evidence is clear, however, that no such changes were brought to the attention of the taxpayers nor were such "corrections" ever authorized or proved. The defendant in presenting his case never suggested such a theory. In fact the only witnesses called by Warner were former employees who testified to his honesty and good character. We believe that in the absence of any other explanation the memoranda prepared by the taxpayers raise an inference of correctness, the information summarized therein being matters within their own personal knowledge. Furthermore, when one considers the types of changes made by defendant it becomes abundantly clear that these changes were not the result of errors discovered by Warner in the memoranda prepared by the taxpayers. For example, in connection with Counts II and III, Warner reduced the gross income of Billy Joe and Linda Worley on their 1964 tax return by exactly $1000 from the amount they claimed they earned in the memorandum submitted to Warner. In 1965 two similar changes were made, reducing gross income by exactly $1000 and also increasing business expenses by exactly $1000. None of these changes was disclosed to the Worleys or authorized by them. The round number amount of the change occurring three times within two separate returns is exceedingly suspect and negatives inadvertance.

As the Government points out the evidence must be viewed in the light most favorable to the prevailing party, and the verdict must be sustained if there is substantial evidence to support it. Teel v. United States, 407 F.2d 604 (8th Cir. 1969); Latham v. United States, 407 F.2d 1 (8th Cir. 1969). We believe the evidence presented was unquestionably sufficient to support the verdict.

4. Warner next contends that the trial court committed reversible error by sending a copy of the indictment and Government exhibits 8 and 9 to the jury room. The copy of the indictment contained 4 counts which had been dismissed and crossed out but which were still legible; exhibits 8 and 9 were tax returns with IRS audit reports attached which allegedly were not admitted into evidence.

The sending of an indictment to a jury room is within the discretion of the trial judge. Shayne v. United States, 255 F.2d 739 (9th Cir. 1958), cert. denied, 358 U.S. 823, 79 S.Ct. 39, 3 L.Ed.2d 64. However, in the case at bar, unlike *Shayne*, the indictment delivered to the jury contained 4 counts which had been dismissed. It seems equally apparent that accusations of crimes other than those charged are not competent or admissible evidence to prove the crimes charged. The admission in evidence of even proven crimes other than those immediately charged is most limited. The Government cannot escape the fact that incompetent evidence was presented to the jury after trial had ended merely by referring to such evidence as once being part of the indictment.

Appellant cites two cases, Osborne v. United States, 351 F.2d 111 (8th Cir. 1965) and Karn v. United States, 11 Alaska 225, 158 F.2d 568 (1946) for the proposition that it is error to deliver

items to the jury room which are not admitted in evidence at the trial itself. The Government's contention that an indictment though not evidence is reviewable by the jury as a matter of procedure cannot apply to portions of the indictment which were dismissed before trial and are thus of no proper concern to the jury.

██ On the other hand, although technical error may have occurred, we do not believe Warner was prejudiced thereby and thus we find the error to have been harmless. Fed.R.Crim.P. Rule 52(a). First, the judge instructed the jury that an indictment is not evidence and that 4 counts of the indictment had been dismissed. Second, the dismissed counts were virtually identical in substance and factual circumstance to the 10 counts not dismissed and added little or nothing of prejudicial effect. Third, the *Osborne* and *Karn* cases, *supra,* involved evidence of a much more highly prejudicial nature. Furthermore, in viewing the total weight of the Government's evidence, it appears overwhelming and essentially unrebutted.

The delivery to the jury of the IRS audit reports attached to Government exhibits 8 and 9 presents a similar procedural problem. Exhibits 8 and 9 were nothing more than income tax returns containing alleged discrepancies resulting in separate counts of violating the tax laws and were clearly relevant to issues at trial and were properly admitted into evidence. Apparently each exhibit had attached to it IRS compiled audit reports which were not separately admitted into evidence.

The question of whether error was committed in sending these audit reports to the jury room is a close one. Warner cites Steele v. United States, 222 F.2d 628 (5th Cir. 1955), cert. denied 355 U. S. 828, 78 S.Ct. 39, 2 L.Ed.2d 41 (1957), a tax case in which the Court held it was reversible error to have sent charts and exhibits to the jury room which to some extent erroneously summarized the testimonial evidence of various witnesses. The crux of that decision, however,

was that the illustrative summaries were erroneously admitted into evidence because they amounted to more than mere arithmetical summaries and in fact were evaluative comments upon previous testimonial evidence. Since it was error to admit those summaries it was even more grievous error to send them to the jury room after deliberations had begun.

The Government relies on Beaty v. United States, 213 F.2d 712 (4th Cir. 1954), cert. denied, 349 U.S. 946, 75 S. Ct. 874, 99 L.Ed. 1272 (1955), in which the Court allowed charts which summarized the evidence to be delivered to the jury room during the jury's deliberations. But in that case the charts, while not formally admitted into evidence, were used by witnesses to illustrate their testimony.

Neither of the above cases is directly in point. *Steele* is not apposite because in the present case most of the material contained in the audit reports was admissible evidence, United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L. Ed. 1546 (1943), and was supported by evidence admitted in the case. It thus became cumulative. The only possibly inadmissible evidence in the audit reports sent to the jury was in connection with exhibit 9 which itself was relevant only to one count on which Warner was in fact acquitted. However, *Beaty* is also not apposite since in that case the charts were used to a significant extent during the trial while in the present case the jury had little cognizance of the audit reports before beginning their deliberations. The cases would seem to support a rule that it is error to send erroneously admitted illustrative evidence to the jury room, but properly admitted illustrative materials may be sent to the jury room. Where illustrative material not formally admitted is delivered to the jury room error has also been committed, but if no prejudice is shown or apparent, the procedural error is harmless.

██ In the present case most of the subject matter contained in the audit reports would have been admissible under the rule in *Johnson, supra*. Moreover,

these audit reports were referred to only obliquely if at all during the trial. As a general rule, of course, exhibits should not be sent to the jury room which have not been admitted.

■ We believe, however, that any error which may have occurred was undoubtedly harmless. Most of the information in the audit reports stated nothing more than the jurors heard in actual testimony and did so in a much more abstract and complicated manner. Those few items which may have gone beyond what was admitted were connected with exhibit 9, which exhibit was relevant only to a count upon which Warner was acquitted. In light of the totality of the Government's evidence, which stands virtually unrebutted, we think that any error which may have occurred was harmless and did not affect any substantial rights of defendant. Fed.R.Crim.P. Rule 52(a).

5. Warner's final contention is that reversible error was committed when both the trial judge and the prosecutor referred, at least by inference, to Warner's failure to take the stand in his own defense.

Warner, of course, was defending himself and not being a lawyer was subject to frequent procedural errors. At one point, after an objection by the prosecuting attorney to Warner's improper argument with a witness the trial judge said, "I think you should ask questions. If you want to testify later on you may." Again, after Warner's closing argument which improperly but without objection went far beyond the evidence, the prosecuting attorney in his closing argument said, "most of what you heard in the closing argument on behalf of Mr. Warner and by Mr. Warner, did you hear it from the witness stand?" It is these two comments which Warner claims violated his rights under the Fifth Amendment and constitute reversible error.

■ Adverse comments by judge or prosecutor upon a defendant's failure to take the stand is a violation of the defendant's rights under the Fifth Amendment. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

*Griffin* has not been extended to automatically cover the situation in which either judge or prosecutor comments on defendant's failure to take the stand where the defendant is presenting a pro se defense. United States ex rel. Miller v. Follette, 397 F.2d 363 (2d Cir. 1968), cert. denied 393 U.S. 1039, 89 S.Ct. 660, 21 L.Ed.2d 585 (1969); Redfield v. United States, 315 F.2d 76 (9th Cir. 1963). The reasons for this are obvious and are exemplified by this case. Throughout the trial Warner exceeded proper procedural bounds. In questioning witnesses he became embroiled in arguments, attempting in effect to testify himself. Similarly, in argument he went far beyond the evidence, once again testifying to facts not brought out during the trial. Needless to say, this puts both the judge and prosecutor in a dilemma. The judge must eliminate improper unsworn testimony by the defendant, and the prosecutor has the right to call to the attention of the jury that statements made by counsel (even if counsel is a pro se defendant) are not sworn to and are not evidence.

The cases demonstrate the difficulty of balancing a defendant's Fifth Amendment right with the necessity for proper courtroom procedure and the right of the prosecutor to distinguish for the jury between evidence and gratuitous defense commentary.

In McKnight v. United States, 115 F. 972 (6th Cir. 1902) it was held that a comment by the trial judge made to professionally trained counsel that the defendant "can testify in rebuttal" was a violation of defendant's Fifth Amendment rights and reversible error. The contretemps between court and counsel in *McKnight* occurred over the court's demand that defendant produce a document in order to facilitate the admission of secondary evidence in its place. Defense counsel not only refused the demand but denied defendant ever pos-

sessed the document and this prompted the judge's aforementioned response.

In United States v. Curtiss, 330 F.2d 278 (2d Cir. 1964) the court held that a vigorous statement by the prosecuting attorney to the effect that the defendant was a faker and that defendant "[told] you bold face lies, not under oath, as the witnesses testified on the chair, each and every one of them were sworn, they testified under oath, but the defendant stood down here and he asked a lot of questions" was reversible constitutional error. The court further held that defendant's closing argument as his own counsel did not waive his Fifth Amendment rights even though he went beyond the record, especially since all Government objections to such improper statements were upheld.

On the other hand in *Redfield, supra,* the court held that a judicial comment that the pro se defendant was entitled to take the witness stand, was not error. The rationale for this decision was that the defendant had been warned repeatedly about his improper comments and thus could be said to have waived his Fifth Amendment rights by improperly testifying.

Finally in United States ex rel. Miller v. Follette, *supra,* the court found that a prosecutor's comment to the jury to the effect that he was not allowed to comment on the pro se defendant's failure to take the stand was not error where the subject of failure to take the stand was first broached by the defendant; and, furthermore, even if error occurred, it was harmless.

Whether the comments by judge and prosecutor in the present case were error is a close question. In general terms we are inclined to follow *Curtiss, supra.* It is true, that a judge must be able to limit counsel to proper questioning and argument whether he be trained counsel or pro se and a prosecuting attorney should have latitude to indicate to the jury what constitutes evidence and what does not as he would if his adversary were trained counsel. On the other hand constitutional rights should be par-

amount and if at all possible judge and prosecutor should be particularly careful not to violate such constitutional rights in the case of a pro se defendant. In most cases judges and prosecutors can adequately perform their tasks without commenting on a defendant's failure to testify. A judge can warn a pro se defendant as to his excesses and out of the jury's presence perhaps warn him of the possible loss and waiver of Fifth Amendment rights which may be attendant upon failure to follow the judge's instructions. A prosecutor can indicate that a defendant's comments are not evidence as he would state that an attorney's comments are not evidence without commenting on a pro se defendant's failure to testify.

The cases cited by the Government would at the very least indicate that not every case where there is a comment which reflects upon failure to take the stand will result in reversible error. However, neither *Redfield* nor *Follette,* the cases relied on by the Government, are entirely analogous to this case. In *Follette* the defendant himself first brought his failure to take the stand to the attention of the jury. In *Redfield* the court's decision was based on the fact that the trial judge had continually and repeatedly admonished the defendant to restrain himself and follow proper methods of questioning and argument, and in failing to do so defendant waived Fifth Amendment rights. Such circumstances did not occur in the case at bar and in addition we retain some doubt about the waiver theory proposed in *Redfield,* in light of the Supreme Court's restriction of the doctrine of waiver in cases involving constitutional rights. Johnson v. Zerbst, *supra.*

On the other hand, the cases cited by the defendant are also not dispositive. The earlier *McKnight* case did not involve a pro se defendant and thus the comment to the defendant's trained counsel that defendant could testify on rebuttal was a fact undoubtedly within the knowledge of the attorney and, thus totally unnecessary.

The prosecutor's comments in *Curtiss* were far more inflammatory than those in the present case. Whereas, in *Curtiss,* the prosecutor called defendant a liar and purposely drew attention to his failure to take the stand, the comments by judge and prosecutor in the present case were not inflammatory and were designed essentially to control courtroom procedure and to educate the jury as to what meets the criterion for evidence which they may consider. Only by inference could they be considered comments, and oblique ones at that, on Warner's failure to take the stand.

In light of *Griffin* and *Curtiss* some error has probably been committed in this case by the comments of the judge and prosecutor. But the judge did advise the jury in his charge that no adverse inference should be drawn from defendant's failure to take the stand, and the prosecutor's remarks would have been proper if applied to trained counsel not defending himself. And in any event the remarks made were mild and innocuous. Although we believe the judge and prosecutor must use, in the lawyer's phrase, an excess of caution, in pro se defense cases, we think the statements here were sufficiently unprejudicial and non-inflammatory and the evidence was so overwhelming that such error as was committed was harmless.

The case of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967), though reversing the lower court and finding the constitutional error committed of commenting on defendant's failure to take the stand not harmless under the circumstances therein, by implication indicated that under a different set of circumstances the same constitutional error could be found to be harmless. Such error is not per se harmful. In *Follette, supra,* the constitutional error of commenting on defendant's failure to take the stand was found to be harmless.

The standards for finding constitutional error to be harmless as determined in *Chapman, supra,* and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) are satisfied in this case and whatever error was committed in the comments by judge and prosecutor during the exigencies of the trial was harmless.

Judgment affirmed.

LAY, Circuit Judge (dissenting). I respectfully dissent.

Waiver of counsel by an accused *must* be more than a mere formal acquiescence. The law is designed to protect an accused from an improper, unwise and foolish forfeiture of the valued right to needed counsel. To waive a right, the meaning and value of which the individual has no knowledge, is the equivalent of no waiver at all. A comprehensive examination by the trial court at the very least should demonstrate that the accused is informed and fully understands the nature and elements of the offense charged, the possible defenses and mitigating circumstances that might be raised on his behalf, and the punishment involved. These factors are to be weighed along with background and experience of the accused in determining whether the accused has made an "intelligent" and "knowing" waiver of counsel.

The record in this case falls far short of demonstrating even a minimal examination necessary to assure the court of an understanding waiver of counsel by the accused. The "waiver" proceeding of February 3, 1969, is so brief I set it forth herein:

"MR. TRIMBLE (Assistant United States Attorney): Your Honor, this matter is here for arraignment. Mr. Warner is charged with violation of the internal revenue law. It does not appear that Mr. Warner has an attorney.

"THE COURT: Mr. Warner, do you have any funds?

"DEFENDANT WARNER: Your Honor, I didn't receive notice to come here until Friday afternoon, very late, in St. Augustine, Florida. And it was difficult to get here. I have not made

any arrangements for an attorney. And really I feel I can defend myself in this matter. Would I be permitted to do so?

"THE COURT: That is your privilege, but I don't recommend it.

"DEFENDANT WARNER: I know. I have always heard that anyone who used himself for a lawyer had a fool for a lawyer.

"THE COURT: That is right.

"DEFENDANT WARNER: I do have income, a fairly good income, but I am very much in debt. I think I can make arrangements for an attorney.

"THE COURT: You know if you are guilty of this offense, you will be put away for a long time?

"DEFENDANT WARNER: Yes, sir.

"THE COURT: If I were you, I would make every effort not to be put away. It is up to you.

"DEFENDANT WARNER: I certainly intend to.

"THE COURT: I will continue this thing until Monday, February 10th, and you have yourself a lawyer at that time.

"Can you hire a lawyer or not?

"DEFENDANT WARNER: Your Honor, isn't it possible to handle it today? I have to drive back to St. Augustine and be back at work as soon as I can.

"THE COURT: If you want to waive the appointment of a lawyer, all right.

"Give him the form.

(The Clerk gives Defendant Warner a form.)

"THE COURT: Where are you living?

"DEFENDANT WARNER: St. Augustine, Florida.

"THE COURT: Where was this offense committed?

"MR. TRIMBLE: St. Louis, Your Honor.

"THE COURT: Well, I assume you want to enter a plea of not guilty. Is that right?

"DEFENDANT WARNER: That is correct, sir.

"THE COURT: All right. We will accept the plea of not guilty, and set this matter for trial on Monday, March 31st at ten o'clock.

"DEFENDANT WARNER: Thank you, sir.

"MR. TRIMBLE: Thank you, Your Honor."

On April 1, 1969, the matter was set for trial. The accused appeared without a lawyer. On this occasion the court examined the accused and determined that he could not afford counsel. The following proceedings then took place:

"THE COURT: Well, as I recall, at the time this matter came up you advised the Court that you did not want a lawyer, is that correct?

"DEFENDANT WARNER: Yes, sir. I couldn't afford a lawyer, and I decided I would do better to represent myself.

"THE COURT: It is not a question of whether or not you can afford a lawyer. You know if you are not able to hire a lawyer, the Court will appoint one for you and I am certain I advised you of that on that day.

"DEFENDANT WARNER: Yes, sir, you did.

"THE COURT: As I recall, you told me you didn't want a lawyer.

"DEFENDANT WARNER: That is true; yes, sir.

"THE COURT: Is that still the case?

"DEFENDANT WARNER: Yes, sir.

"THE COURT: You want to represent yourself in this matter?

"DEFENDANT WARNER: Yes, sir.

"THE COURT: You have that privilege.

"MR. RUZICKA: I just thought, Your Honor, that the record should be perfectly clear so that we don't have any problem later on about the fact that a lawyer was not appointed for him.

"THE COURT: You understand thoroughly that this Court will appoint you a lawyer if you don't have the funds to employ one?

"DEFENDANT WARNER: Yes, sir.

"THE COURT: You still don't want a lawyer?

"DEFENDANT WARNER: No, sir.

"THE COURT: You want to defend yourself?

"DEFENDANT WARNER: Yes, sir.

"THE COURT: All right. Fine. Let's go. Bring the jury in."

If the above proceedings are sufficient within the meaning of Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), to assure the court of an *"intelligent"* waiver, then the only inquiry a trial judge need ever make is whether the indigent accused desires the government to furnish him a lawyer. If the accused answers "no," that will suffice. I cannot believe this kind of cursory examination fulfills a trial judge's obligation under the Constitution. See McGee v. United States, 355 U.S. 17, 78 S.Ct. 64, 2 L.Ed.2d 23 (1957).[1]

Even an educated and intelligent individual, unless he is trained in the law, has little understanding as to what a trial involves: the testing of an indictment, the skill in selecting a fair jury, the rules of procedure, the rules of evidence, the request for instructions, or the propriety of conduct. Such an individual lacks the capacity to prepare a defense, to cross-examine witnesses, and to make proper objections. He is literally "at sea" in the courtroom.

Such an observation does not mean that one cannot make a *knowing* and *intelligent* waiver of counsel. However, if the accused does not demonstrate an ability to fully understand the complexity of the charge or the possible defenses involved, then the trial court should reject his waiver and appoint counsel. Cf. United States ex rel. Miner v. Erickson, supra (dissenting opinion). Such a determination can only be made by a searching and comprehensive inquiry of the accused by the court. If the court is

1. In *McGee*, the Supreme Court remanded to the district court for plenary hearing, *inter alia*, a claim that at the time counsel was "waived" the district court failed to inform the accused of possible defenses to the charge. The Supreme Court vacated the judgment of the Court of Appeals of the Seventh Circuit in United States v. McGee, 242 F.2d 520 (7 Cir. 1957).

As the Court of Appeals of the Tenth Circuit observed:

"The right to the assistance of counsel is one of substance and it is not satisfied by mere legalistic formality. * * * It is the duty of the trial judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of the constitutional right at every stage of the proceedings. That protecting duty imposes upon the trial judge the responsibility of determining whether there is an intelligent and competent waiver by the accused. To discharge that duty, the court must investigate as long and as thoroughly as the circumstances of the case reasonably demand. The fact that an accused may state that he is informed of his right to counsel and desires to waive such right does not automatically end the responsibility of the court." Snell v. United States, 174 F.2d 580, 581–582 (10 Cir. 1949).

See e. g., United States ex rel. Ackerman v. Russell, 388 F.2d 21, 23 (3 Cir. 1968); Meadows v. Maxwell, 371 F.2d 664 (6 Cir. 1967); Shawan v. Cox, 350 F.2d 909 (10 Cir. 1965). And see the discussion and additional cases in United States ex rel. Miner v. Erickson, 428 F.2d 623 (8 Cir. 1970) (dissenting opinion).

convinced that an accused is an intelligent, educated individual who fully understands the charge, the elements of the offense, the overall benefits a lawyer can provide and the maximum punishment that may be involved, then and only then, should it be ready to accept waiver of counsel.

Until the majority of the Supreme Court chooses to make clear whether formal waiver of counsel is all that is needed, I shall continue to voice my disagreement as to waiver of counsel based upon abbreviated proceedings. See Von Moltke v. Gillies, 332 U.S. 708 at 724, 68 S.Ct. 316, 92 L.Ed. 309. Unless the trial court conducts a penetrating inquiry and examination of an accused and informs him of the nature and elements of the crime charged, as well as the value of counsel in defending his innocence, waiver of counsel cannot in my judgment be an "intelligent" act under the constitutional principles governing waiver, as discussed in Johnson v. Zerbst, supra, and Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Without fully understanding the right being waived, an accused is in actuality being denied his Sixth Amendment right to counsel.

As Mr. Justice Goldberg said in another context:

"No system worth preserving should have to *fear* that if an accused is permitted to consult with a lawyer, he will become aware of, and exercise, these rights."[2]

When the law condones an accused's hurried, formal waiver of the basic right and need to be represented by counsel in a criminal case, it acts in "fear" rather than human concern. I would reverse the judgment of conviction on the basis of the denial of due process under the Fifth Amendment and the denial of right to counsel under the Sixth Amendment.

2. Escobedo v. Illinois, 378 U.S. 478, 490, 84 S.Ct. 1758, 1764, 121 L.Ed.2d 977 (1964).