Charles LaPLANTE, Appellant,

v.

Charles L. WOLFF, Jr., Appellee.

No. 74–1175.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 9, 1974.

Decided Nov. 8, 1974.

Certiorari Denied March 24, 1975.
See 95 S.Ct. 1436.

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

Leroy P. Shuster, Lincoln, Neb., for appellant.

Harold Mosher, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

Charles LaPlante appeals from the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. He was convicted in 1960 upon a plea of guilty in the district court for Saunders County, Nebraska of breaking and entering with intent to steal. In 1968 he was convicted by a jury in the district court for Dodge County, Nebraska of another crime. Based in part on his 1960 conviction, he was then found to be an habitual criminal and sentenced to ten years. The 1968 conviction and sentence were affirmed on direct appeal.[1] Subsequent thereto the Supreme Court of Nebraska also affirmed the denial in Dodge County of his motion for post-conviction relief.[2]

The petition before us asserts that the 1960 conviction was unconstitutional because: 1) "no counsel was appointed for him or offered to him at the expense of the county," and 2) "he did not intelligently or understandingly waive the assistance of counsel and the court did not conduct a hearing to determine whether an intelligent or understanding waiver had been made."

District Judge Schatz held two hearings on the petition, at each of which the petitioner was present and represented by counsel. Determination was made after the first hearing (August 29, 1973), that petitioner had not delib-

1. State v. LaPlante, 183 Neb. 803, 164 N.W. 2d 448 (1969).

2. State v. LaPlante, 185 Neb. 816, 179 N.W. 2d 110 (1970).

erately by-passed the orderly procedures of the state courts, and that a full and fair factual hearing on the alleged constitutional infirmity in the 1960 conviction should be held. Such was held by Judge Schatz on December 3, 1973, at which time the petitioner testified and the court received the transcript of the 1960 proceedings in the district court for Saunders County, substantial portions of which appear in the Appendix hereto. It was the finding of the District Judge, in part, after a review of the authorities, that

> This record shows that the trial judge questioned Mr. LaPlante specifically about whether he understood that he had a right to an attorney and that Mr. LaPlante specifically refused to take advantage of this right. Further, the record shows that the petitioner was present in court when similar questions were asked of the other defendants, so petitioner had a period of time to consider what his own answers would be.
>
> The record also shows that petitioner declined an opportunity to consult with his family before entering a plea. This offer by the trial court clearly demonstrates that it wished to impress on Mr. LaPlante the importance of the decision facing him and the fact that the Court would give him additional time to make this decision if he so desired.
>
> * * * The transcript as a whole shows that Mr. LaPlante was concerned with having the entire matter disposed of as quickly as possible, and that he understood exactly what he was doing when he declined the offer of the court to appoint counsel for him.
>
> Therefore, this Court finds that Mr. LaPlante made a knowing and intelligent waiver of counsel at the time of his 1960 conviction and that his petition for a writ of habeas corpus should be denied.

■ The first issue, offer or appointment of counsel, may be summarily disposed of. The petitioner first asserted, in the August 29 hearing, that he didn't "believe they ever made an offer of an attorney," then stated that he had "signed a paper but I don't know what was on it." At the second hearing (December 3), his memory was more positive:

> Q. You don't recall at any time during any of the court proceedings you have described today of the Judge or anyone else asking you if you wanted counsel?
>
> A. No.

It is clear from the transcript, *infra* Appendix, that, as the District Court found, the petitioner was in truth tendered counsel.

■ The petitioner also asserts a nonunderstanding waiver, which, of course, is no waiver. Thus we are faced with the problem of determining, some fourteen years after the event, the then state of mind of the petitioner, with all of the uncertainty resulting from problems of credibility and reliability of memory, here the more difficult because of the petitioner's inaccurate statements made with respect to his first issue.

The objective facts respecting waiver tendered us by petitioner, upon whom the burden rests, are a) He is an Indian; b) He was 18 years of age at the time. Subjectively, he asserts that he didn't comprehend what was happening. Legally he suggests various defenses he might have asserted and relies upon the plurality opinion in Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948) and holdings consistent therewith as establishing a constitutional defect in his 1960 hearing. Putting aside for the moment the constitutional analysis, and looking at the specific facts before us, petitioner relies solely upon his age, his ethnic origin, and his own self-serving version of his understanding at the time. Upon the totality of circumstances presented on this record these are not enough. We are not persuaded that there has been any basic unfairness in his treatment.

So much has been written upon the meaning to be given to the words "knowing and intelligent waiver" of counsel that it would be an affectation of scholarship to present further review. The opinions of this court in Collins v. United States, 206 F.2d 918 (8th Cir. 1953), United States ex rel. Miner v. Erickson, 428 F.2d 623 (8th Cir. 1970), and United States v. Warner, 428 F.2d 730 (8th Cir.), cert. denied, 400 U.S. 930, 91 S.Ct. 194, 27 L.Ed.2d 191 (1970) (the latter cases illuminated by the dissents of Judge Lay), and the Seventh Circuit opinion in Spanbauer v. Burke, 374 F.2d 67 (7th Cir. 1966), cert. denied 389 U.S. 861, 88 S.Ct. 111, 19 L.Ed.2d 127 (1967), discuss thoroughly the issues involved.[3]

Much of the current controversy concerns the interpretation to be given Von Moltke v. Gillies, *supra*.[4] It is there said in part:

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

332 U.S. at 724, 68 S.Ct. at 323.

With literal adhesion to the words just quoted the petitioner points out to us the many omissions of the trial court. Thus he "did not inform or inquire of the defendant," for example, "That the state must prove the alleged crime by competent witnesses; and that a crime cannot be proven by hearsay." This is all true, of course; but if these enuncia-

tions by the court are to be required, must not the courts also explain the concept of competence as well as the rudiments of hearsay and its exceptions, if, that is, the information to the defendant is to be (as the saying goes today) "meaningful?"

It is, of course, possible to apply the *Von Moltke* language thus. But the courts have not done so. As we said in United States v. Warner, *supra* 428 F.2d at 734:

> The United States Courts of Appeals have not applied the broad language of *Von Moltke* literally. In Spanbauer v. Burke, 374 F.2d 67 (7th Cir. 1966), cert. denied 389 U.S. 861, 88 S.Ct. 111, 19 L.Ed.2d 127 (1967), which contains perhaps the most exhaustive study of the law of waiver of counsel as applied in the various circuits, the Court said, 374 F.2d at 72:
>
> > "It appears that federal courts have looked to the substance of the *Von Moltke* formulations, and not to its formulas  *  *  *  [and]
> >
> > \*     \*     \*     \*     \*     \*
> >
> > " *  *  *  have  *  *  *  viewed the question of waiver of counsel as ultimately an issue, irrespective of the trial court's fulfillment of its *Von Moltke* duties, of whether the accused knowingly and intelligently chose to waive counsel."

Virtually the same appraisal of the law was made by this Court in Collins v. United States, 206 F.2d 918 (8th Cir. 1953).

The reasons therefor are not obscure. A literal compliance with the quoted portion of the *Von Moltke* opinion would require the District Judge to "give a

---

3. *See generally* Y. Kamisar, W. LaFave & J. Israel, Modern Criminal Procedure 57–60 (4th ed. 1974) and cases and authorities cited therein.

4. *Von Moltke* was not an opinion of the Court. Four of the Justices were of the opinion that the waiver of counsel there involved was not competent. Justices Frankfurter and Jackson, agreeing to reverse, called for further findings as to whether or not the plea and waiver were based upon misin-

formation from an F.B.I. agent. At least one court has considered *Von Moltke sui generis* and has relied more heavily on Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461 (1938) ; Twining v. United States, 321 F.2d 432 (5th Cir. 1963), cert. denied, 376 U.S. 965, 84 S.Ct. 1126, 11 L.Ed.2d 982 (1964) ; *see* Spanbauer v. Burke, 374 F.2d 67, 72 n. 3 (7th Cir. 1966), cert. denied 389 U.S. 861, 88 S.Ct. 111, 19 L.Ed.2d 127 (1967).

short course in constitutional law and judicial procedure."[5] Those who have struggled with the inculcation of these rudiments in first-year law students will be keenly aware of the problems involved. Moreover, in the context before us the legal principles must be explained and digested in a matter of minutes, or possibly days if the court has a light docket, rather than the months ordinarily allotted. But an even greater difficulty is presented by the fact that we have, not a willing student and a skilled teacher, but an accused, with all of his constitutional protections, and a Judge, with all of his constitutional obligations. We tend to share the concerns expressed by Judges Ely and Hufstedler, dissenting in Hodge v. United States, 414 F.2d 1040, 1054 (9th Cir. 1969), that the trial court, in order to acquire information as to "possible defenses," may risk infringement on the accused's constitutional right against self-incrimination. In the light of these and similar considerations there is much support for the view that the "federal courts have looked to the substance of the *Von Moltke* formulations, and not to its formulas." Spanbauer v. Burke, *supra* 374 F.2d at 72 and cases herein cited; Collins v. United States, *supra* 206 F.2d at 922.

We have heretofore summarized the petitioner's contentions. On the other hand it appears that he had completed the ninth grade in school, according to his brief, and that he was able to speak and understand the English language. At the hearing, quoted in the margin, he took pains to correct the spelling of his name. The court was painstaking in its explanation of his rights to counsel and solicitous respecting his treatment, even to the extent of telling him that "if you want to talk to me about it [the Proba-

tion report], you can let the Sheriff know and I will be happy to talk to you at any time." In Nebraska the assignment of counsel, to those having "not the ability to procure counsel,"[6] antedated *Gideon*[7] by some 90 years, and the state judges were well aware of the practice and its procedural requirements, as exemplified by the record before us. Particularly pertinent hereto is the observation of our court in an earlier case involving the related question of the proper acceptance of a plea of guilty[8] that it did not believe "that all sentences which have in the judicial informalities of the past half century or more been so pronounced must consequently be branded as legal nullities and void incarcerations," and, particularly when, as here, the petitioner not only did not assert his innocence but freely admitted his guilt.

We agree with the District Court that the petitioner has not carried his burden of proof. The totality of the circumstances show the conduct of a nonperfunctory inquiry appropriate to the individual involved and the crime charged. The standards of basic fairness have been met. We exact compliance with no formula nor adhesion to a specific script.

Affirmed.

## APPENDIX

The following is a partial transcript of the 1960 proceedings in the district court for Saunders County:

THE COURT: My name is John Zeilinger and I am one of the Judges here.

I see that you have been in the courtroom while I have been talking to Donald Hansen and Robert Fajman, and both of those young men have been arraigned. Have you been able to hear most of what was said?

5. W. Beaney, The Right to Counsel in American Courts 63 (1955).

6. Ch. 58 Neb.G.S. § 437 (p. 821) (1873) (now Neb.R.R.S. § 29-1804.04 to 29-1804.07 (Supp.1972)).

7. Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963).

8. Collins v. United States, 206 F.2d 918, 922 (8th Cir. 1953).

THE DEFENDANT: Yes, sir.

THE COURT: I would like to ask you a few questions and, as I told them, you don't have to answer if you don't want to and, if you don't want to, please say so.

Are you Charles LaPlante?

THE DEFENDANT: Yes, sir. The last name is spelled with an "e" on the end.

THE COURT: L-A P-L-A-N-T-E?

THE DEFENDANT: Yes, sir.

MR. HAESSLER: Do I have permission to add that, your Honor?

THE COURT: All right. And how old are you?

THE DEFENDANT: Eighteen.

THE COURT: Do you have an attorney?

THE DEFENDANT: No.

THE COURT: Do you want time to consult with an attorney about your rights in this matter?

THE DEFENDANT: No.

THE COURT: I want you to understand that, under the laws of Nebraska, a person that does not have the means to employ an attorney is entitled to have an attorney appointed for him at the expense of the County. Do you understand your right in that regard?

THE DEFENDANT: Yes, sir.

THE COURT: Do you want to make application to have the Court appoint an attorney for you?

THE DEFENDANT: No.

THE COURT: And you specifically waive the right to have an attorney?

THE DEFENDANT: Yes.

THE COURT: Now, do you want some time to consult with the members of your family and to get members of your family here before you are arraigned?

THE DEFENDANT: No.

THE COURT: You understand that I will give you time for that purpose if you want to do it and we will set another time for this hearing and come back again.

THE DEFENDANT: I don't think so.

THE COURT: Under the law every person charged with a crime, a felony, is entitled to have a copy of the Information for twenty-four hours before he is arraigned, and you have been served with a copy of this Information, as I understand it, is that correct?

THE DEFENDANT: That's right.

THE COURT: But it hasn't been twenty-four hours?

THE DEFENDANT: No, it hasn't.

THE COURT: So, before we can proceed, you have to waive the right to have a copy of the Information for twenty-four hours before proceeding. Do you waive that right?

THE DEFENDANT: Yes.

THE COURT: And you signed the statement on the back of the Information in which you waive your right to have a copy of the Information for twenty-four hours?

THE DEFENDANT: Yes.

THE COURT: And you did that this morning, is that right?

THE DEFENDANT: That's right.

THE COURT: But, in spite of that, if you now say that you want time, I will give you time; I want you to understand that. If you just as soon go ahead with this hearing now, we will go ahead.

THE DEFENDANT: I would like to go ahead with it.

THE COURT: All right, sir, do you understand the four different choices a person has in the way of pleading to an Information?

THE DEFENDANT: Yes, sir.

THE COURT: You have heard me explain that to these other young men?

THE DEFENDANT: Yes.

THE COURT: And are you ready to be arraigned at this time?

THE DEFENDANT: Yes, sir.

THE COURT: All right, I will ask the County Attorney to read the Information.

(Whereupon, the County Attorney read said Information.)

THE COURT: You have heard the reading of the Information. Do you understand the nature of the charge against you?

THE DEFENDANT: Yes, sir.

THE COURT: And are you ready to enter a plea to that Information at this time?

THE DEFENDANT: Yes, sir.

THE COURT: And how do you plead?

THE DEFENDANT: Guilty.

THE COURT: Now, has anybody threatened you in any way to induce you to enter that plea?

THE DEFENDANT: No.

THE COURT: Has anybody promised you anything to enter that plea?

THE DEFENDANT: No.

THE COURT: And you do so voluntarily, is that right?

THE DEFENDANT: That's right.

THE COURT: All right, I want to look into this matter and I'm going to have to remand you to the custody of the Sheriff while I do that, and I will ask our Probation Officer to make an investigation and report to me. The Probation Officer will be around here and talk to you about that matter and, if you want to talk to me about it, you can let the Sheriff know and I will be happy to talk to you any time.