**UNITED STATES of America, Plaintiff,**

v.

**Tanya POWELL and Florencia Walker, Defendants.**

No. CR2–89–243.

United States District Court,
S.D. Ohio.

June 10, 1991.

Robyn Jones and Salvatore Dominguez, Asst. U.S. Attys., Columbus, Ohio, for plaintiff U.S.

Fred Thomas, Columbus, Ohio, for defendant Tanya Powell.

Richard Cline, Columbus, Ohio, for defendant Florencia Walker.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to the motion of Defendants Powell and Walker for the Court to declare a mistrial. The motion comes as a result of the inadvertent inclusion of a copy of written transcripts of the videotaped testimony of Government Witnesses Brenda Givens, Joyce Crawford and Halima Isa in the items taken back with the jury to the deliberation room.[1] The transcript itself was not part of the evidence.

### FACTS

The actual copy of the transcript that went into the deliberation room with the jury was a full copy of the testimony of the three witnesses. The copy was created for the convenience of the Court Reporter and noted, with a yellow highlighter, those sections of the videotaped testimony that were not to be viewed by the jury. At trial those sections were simply skipped over and thus not in evidence. Sections of the transcript were not to be viewed by the jury for one of two reasons, either the Court upheld an objection properly made on the record, or by stipulation of the parties the testimony was deemed unnecessary

---

1. The videotaped depositions were performed in Tokyo, Japan, where the three government witnesses and co-conspirators are currently being held in connection with the same heroin trafficking conspiracy. Counsel for both Powell and Walker were in attendance at the depositions, had an opportunity to cross examine the witnesses and place any objections on the record. The ground rules for objections were that all objections were to be made on the record and upon returning to the United States this Court would rule on each objection individually.

or irrelevant. For purposes of determining what harm, if any, was done the Court need only concern itself with that information which was excluded based upon sustained objections.

The transcripts of the three witnesses consist of approximately Seven Hundred pages of testimony. The transcript contained Three Hundred and Sixty objections (360), Two Hundred and Twenty (220) from the defendants and One Hundred and Forty (140) from the Government. The Court sustained Eighteen (18) objections; coincidentally, nine (9) each for both the government and the defendants.[2]

Upon determining that the jury was in possession of the transcripts the Court immediately held a conference in chambers, on the record, with all parties present. At the conference the foreperson was called in and informed to bring the notebook containing the transcripts. The Court interviewed the foreperson concerning the transcripts. Essentially, the foreperson informed the Court that the transcripts were indeed read, at times aloud, however, the jury was of the impression that the lines and pages that had been highlighted were not to be read. The foreperson stated that he had not read any of the highlighted materials and was of the belief that none of the other jurors had read that material either. The foreperson was then sent back to continue deliberations with the other jurors.

Concerned that the jury may reach a verdict before the Court and counsel had an opportunity to fully consider the situation, the Court stopped deliberations and sent the jury home for the evening. This provided counsel an opportunity to research and brief the Court on the matter. The briefs were submitted the following morning. During the evening break the Court had an opportunity to review the contents of the transcripts with specific interest placed upon the contents of those sections that were highlighted due to the Court's sustaining of objections (See fn. 2).

On May 30, 1991, the Court reconvened counsel in chambers and informed them of the Court's desire to *voir dire* the jurors individually to better determine what, if any, effect the inclusion of the extraneous materials had on their deliberations. Each juror was called before the Court and questioned about the blue notebook containing the transcriptions. After questioning the juror, the juror was instructed not to discuss the contents of the discussions just held with the Court and was sent to a second room separate from those jurors waiting to be questioned.

Essentially the jurors were asked five questions: 1) Whether they had ever seen the blue notebook containing the transcripts; all stated that they had seen the notebook in the jury deliberation room; 2) Whether they had read from the notebook; six jurors said they had in fact personally read from the notebook; 3) If they had read from the book, without specifics, what sections they read from; virtually all individuals that had read from the notebook stated they had reread portions of Brenda Givens' testimony; 4) Whether they had seen or noted the yellow highlighted material; some had seen the yellow highlighting and others simply heard that the book contained yellow highlighting; and 5) Whether they had read any of the yellow highlighted material; the jurors independently yet unanimously stated that it was their belief that the highlighted materials were not to be read. Each juror separately and individ-

**2.** In reviewing the transcripts the only sections upon which the motion for mistrial are based are the nine (9) objections by defendants sustained by the Court. In reviewing these objections and the Court's rulings, they reflect that of the nine sustained objections from the defendants, only four even tangentially involved Defendants Powell or Walker (1. Brenda Givens' testimony, Vol. I at pg. 35, ln. 10; requiring the deletion of lns. 4–17; 2. Givens' testimony, Vol. I at pg. 206, ln. 13; requiring the deletion of lns. 5–14; 3. Givens' testimony, Vol. II at pg. 72 ln. 2; requiring the deletion of ln. 25 on pg. 71 through ln. 4 on pg. 72; and 4. Joyce Crawford's testimony, at pg. 57, ln. 1; requiring the deletion of ln. 21 on pg. 56 through ln. 11 on pg. 57). These lines of testimony constitute 54 lines or approximately two (2) pages of testimony out of seven hundred pages or approximately Seventeen thousand, Five hundred (17,500) lines of testimony.

ually stated that they had not read any of the yellow highlighted materials.

At the completion of the *voir dire* the Court denied the motions for a mistrial and informed the parties that the instant Opinion and Order would be forthcoming. Court was briefly reconvened at which time the Court read the following instruction to the jurors:

Inadvertently a written copy of the videotaped testimony was included with those items of evidence which were sent back with you to the jury room for your consideration. This was not the fault of anyone. The Court assumes control of all exhibits and takes full responsibility for the error.

You are not to give any greater weight to the testimony of those witnesses over any other testimony or evidence simply because you may have had an opportunity to view a portion of the written transcripts. As previously instructed, you are to rely upon your collective memories of the testimony and your own personal notes. You must not and should not consider in any way anything you may have read in the written transcripts. These transcripts are not part of the evidence and cannot be considered.

I will now ask you to continue your deliberations.

At approximately 3:00 p.m., on May 30, 1991, the jury returned a verdict on all counts. The defendants were found guilty on all counts except for Count Eight, wherein the jury found Defendant Powell not guilty.

## STANDARD

■ The granting of a mistrial is within the discretion of the trial court and the standard is whether defendant's right to a fair and impartial jury has been impaired. *United States v. Evans,* 542 F.2d 805, 815 (10th Cir.1976), *cert. denied,* 429 U.S. 1101,

97 S.Ct. 1124, 51 L.Ed.2d 550 (1977).[3] The question presented in these types of cases is whether the materials inadvertently placed before the jury was so blatantly prejudicial that a mistrial must be declared regardless of any affirmation by the jurors that they could continue to be fair and impartial in their deliberations.

In *Dallago v. United States,* 427 F.2d 546 (D.C.Cir.1969), the Court held that consideration by the jury of documents not in evidence is error, and if prejudice is shown, the conviction will be reversed and a new trial ordered. *Id.* at 553. Nonconstitutional error is prejudicial if one cannot reasonably conclude that the judgment was not substantially swayed by the error. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *Dallago,* 427 F.2d at 560; *Leigh v. United States,* 308 F.2d 345, 346 (1962). The general standard for determining whether the extraneous evidence was prejudicial is whether there is "a reasonable possibility that the jury's verdict was influenced by the material that improperly came before it." *United States v. Barnes,* 747 F.2d 246, 250 (4th Cir.1984) (citing *Llewellyn v. Stynchcombe,* 609 F.2d 194 (5th Cir.1980); *United States v. Vasquez,* 597 F.2d 192 (9th Cir.1979)).

Additional cases have held that there is a presumption of prejudice where improper evidence has been made available to the jury, and the burden is on the government to prove that it is harmless. *See, e.g., United States v. Barnes,* 747 F.2d 246 (4th Cir.1984) (citing *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); *United States v. Bassler,* 651 F.2d 600 (8th Cir.1981); *United States v. Howard,* 506 F.2d 865 (5th Cir.1975)).

In *Dallago,* the Court held that if the extraneous document erroneously submitted to the jury is merely cumulative of

---

**3.** It should be noted that in *United States v. Evans,* a juror had received a letter signed with the name of one of the defendants, the courtroom received a bomb threat during trial, and a defense witness assaulted a juror. After each of the incidents the judge questioned the jurors as to their ability to still be impartial. After all jurors had responded that they could still be impartial, the trial court denied the motions for mistrial. The Tenth Circuit upheld the denial of the motion for mistrial, finding that there had not been an abuse of discretion and the Supreme Court denied certiorari.

other, properly admitted evidence, there is harmless error. *Id.* at 559. The Court reaffirmed their position in *United States v. Treadwell,* 760 F.2d 327 (1985), wherein the Court found harmless error due to extraneous documentation being cumulative of properly admitted evidence. In support of the Court's holding it cited at fn. 20, *United States v. Siragusa,* 450 F.2d 592, 594–95 (2nd Cir.1971) (no prejudice where information contained in erroneously transmitted material had been introduced at trial), *cert. denied,* 405 U.S. 974, 92 S.Ct. 1195, 31 L.Ed.2d 248 (1972); and *United States v. Warner,* 428 F.2d 730, 737–38 (8th Cir.) (information contained in audit report erroneously sent to jury stated nothing more than what jurors heard in actual testimony), *cert. denied,* 400 U.S. 930, 91 S.Ct. 194, 27 L.Ed.2d 191 (1970).

In the Tenth Circuit case of *United States v. Pinelli,* 890 F.2d 1461 (1989), the Court confronted a similar problem in that a nonevidentiary "post-it" tab had been inadvertently sent to the jury. The post-it contained a short statement which the Court deemed to be merely the contention of the government.[4] The Appellate Court found that the post-it was simply cumulative of the government's contentions and as such was not a basis for reversal.

The Appellate Court then went on to consider whether the District Court should have polled the jury to determine whether a prejudicial effect existed. The Appellate Court stated, "[t]he conscientiousness displayed by the jury and the cautionary instruction given by the trial court convince us that the matter was properly handled, and the alleged error, if any, in failing to poll the jury was harmless. See *United States v. Treadwell,* 760 F.2d 327, 340–41 (D.C.Cir.1985)." *United States v. Pinelli,* 890 F.2d at 1474.

This Court has also taken into consideration the Second Circuit case of *Bulger v. McClay,* 575 F.2d 407 (1978), wherein the Court found that there was no "real question that [the defendant] was prejudiced by the jury's discussions of this extraneous evidence", and thus the Court affirmed the lower court's granting of a petition for writ of habeas corpus on the ground that information outside the record had come to the attention of the jury. However, that case is clearly distinguishable from the instant matter based upon the facts.

The jury reported to the Court that they were unable to reach an unanimous verdict, the Court properly read a modified *Allen* charge, and one and half hours later the jury returned with a conviction. It came to the Court's attention at some later point that the juror that had not originally voted for conviction "changed his vote after one of the other jurors mentioned the contents of a newspaper article published over the weekend. That story contained the [defendant's] address, which it set forth as quite distant from the scene of the crime, and, accordingly, rendered [the defendant's] excuse for being in the area highly improbable." *Id.* at 409. The Court properly concluded that there was no real question that the defendant had been prejudiced by the jury's discussion of the extraneous evidence. In that case, the extraneous evidence was clearly pivotal in changing the jury from "hung" to rendering a verdict convicting the defendant.

## ANALYSIS

■ Based simply upon the information obtained from questioning the jurors, the Court can find ample reason for denying the motion for mistrial. The court found the jurors to be forthright and honest in

---

**4.** The case involved a gambling prosecution and the post-it note read, "Phil Pinelli lay-off 11/26/84". The note was the government's contention that the document the post-it was attached to reflected a "lay-off" wager.

To remedy the situation, the Court read the following instruction:

The yellow "post-it" tab on Exhibit 66 was not received as a part of the evidence. That tab was mistakenly left on the exhibit when it

was received in evidence. It was a note made by government lawyers and refers only to the government's contention. I have removed the tab and you will completely disregard it in considering the evidence in this case.

It would be a violation of your oath to give it any consideration.

Based upon this instruction the trial court denied the motions for a mistrial.

their responses to the Court's questions. Furthermore, each and every juror responded independently that he or she had not read the highlighted materials and that the jury as a whole was of the impression that that material was not to be read. Therefore, the jury obtained no information from the transcript that had not been properly placed before them through the videotaped testimony at trial.

Based upon the jurors' representations, the only potential prejudice would be the cumulative nature of the documents, and numerous courts have spoken to that issue and have found no prejudice in such an instance. *See, e.g., Dallago,* 427 F.2d 546 (D.C.Cir.1969); *Treadwell,* 760 F.2d 327 (D.C.Cir.1985). As previously stated, the Court, based simply upon the jurors' representations, can find ample reason for denying the motion for dismissal, nonetheless, the Court will address some of the other arguments set forth by the defendants and address the concerns of any potential for prejudice had the jurors even read the highlighted material.

The Court has had the opportunity to revisit the transcripts and their contents. There were four relevant objections sustained by this Court that effect the Defendants, however, one of the four objections is contained in the testimony of Witness Joyce Crawford and none of the jurors made mention of reviewing the transcripts of Joyce Crawford.[5] Instead, the jurors all stated that they had reviewed the testimony of Witness Brenda Givens.

In reviewing the other three objections, the first reflects that the objection was sustained because the witness was making statements based upon assumptions rather than her own personal knowledge. The objection was proper and the sustaining of the objection was the correct decision, however, the inclusion of the testimony is not at all prejudicial and primarily consists of discussion between defense counsel and the Government's attorneys.

The second relevant sustained objection was by Attorney Cline and again concerned

an assumption by the witness. Likewise, the inclusion of the testimony was of limited relevance and any potential for prejudice would by *de minimis.*

The third, and final, relevant sustained objection was made by Attorney Cline and once again dealt with an assumption by the witness. The objection to the two lines of witnesses testimony was properly excluded from the videotape by the Court, however, its inclusion in the transcripts sent back with the jury could not possibly be deemed to be of any reasonable prejudicial effect.

Therefore, after having reviewed the entire transcripts, with special emphasis placed upon the above-referenced areas, the Court is of the opinion that there is no reasonable possibility that the transcripts could have prejudiced the defendants. Clearly, the majority of the transcripts that went back with the jury were merely cumulative of the videotaped testimony viewed at trial.

While it was not the intention of the Court to permit the jurors to have a copy of the transcripts, it should be noted that the Court in the Preliminary Jury Instructions does provide that under certain circumstances the Court will bring the jurors back into the courtroom and have testimony of a witness read back to them. Therefore, the fact that the transcripts as a whole were cumulative is not a basis for declaring a mistrial.

Defense Counsel has also argued that the inclusion of the transcripts in the items sent back with the jury places additional emphasis or weight on those witnesses' testimony. This argument is not well taken for a couple of reasons. First, the Court specifically instructed the jurors that "[they] are not to give any greater weight to the testimony of those witnesses over any other testimony or evidence simply because you may have had an opportunity to view a portion of the written transcripts." Second, were the jurors even to place additional emphasis on that testimony, they would have been giving it greater emphasis

---

**5.** Nonetheless, the objection in the testimony of Joyce Crawford simply reflected that the witness was speculating as to "what she might have done". Testimony of Crawford at p. 57, ln. 1.

over other *government* witnesses' testimony since the defense put on no witnesses. Therefore, there is no balancing of government witnesses versus defense witnesses upon which additional emphasis may create an unfair advantage or even give rise to prejudice. As such, the defendants' arguments concerning additional emphasis place on the testimony is not well taken.

For all of the above-stated reasons, the defendants' motion for a mistrial based upon the inclusion of written testimony in with those items sent back with the jury is hereby DENIED.

IT IS SO ORDERED.